**Ronald McDUFFIE, Appellant,**

v.

**Kenneth E. BLASSINGAME, Blassingame and Osburn, P.C., Carol McDuffie and Robert (Bob) O'Donnell, Appellees.**

No. 07–93–0198–CV.

Court of Appeals of Texas, Amarillo.

Aug. 12, 1994.

Rehearing Denied Oct. 13, 1994.

Kenneth M. Cole, Jr., DeSoto, for appellant.

Randall E. Hand, Leland I. Ammons, Dallas, Harry G. Potter, III, Austin, for appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

DODSON, Justice.

Appellant, Ronald McDuffie, filed suit against appellees, Carol McDuffie, Kenneth E. Blassingame, Blassingame and Osburn, P.C. (the firm), and Robert O'Donnell (collectively referred to as the appellees), for violation of the Texas Deceptive Trade Practices and Consumer Protection Act (the Act).[1]  In three partial summary judgments, the trial court ruled in favor of the appellees that Ronald take nothing on his action.  Later, the court rendered judgment for attorney's fees in favor of Carol, Blassingame, and the firm based on their counterclaims alleging that Ronald's action was groundless, brought in bad faith, and brought for the purpose of harassment.  We affirm.

In six points of error, Ronald contends the trial court erred in (1) granting Carol's, Blassingame's, and the firm's motions for summary judgment; (2) accepting O'Donnell's judicial immunity defense, motion for summary judgment, and motion to quash his subpoena; (3) denying his motion for summary judgment and motion for reconsideration; (4) denying his legal and factual defenses to the appellees' counterclaims; (5) permitting Carol to assert the attorney-client privilege on her counterclaim; and (6) signing the findings of fact and conclusions of law.

A brief review of the facts is necessary.  Carol and Ronald were divorced in 1982.  Carol was appointed managing conservator of their two minor children, and Ronald was appointed possessory conservator with visitation rights.  In June 1989, Carol filed a motion to modify in a suit affecting the parent-child relationship, seeking to modify visitation rights and medical insurance coverage (the prior suit).  Blassingame was Carol's attorney in the prior suit and a partner in

---

1. The Act is codified in Tex.Bus. & Com.Code Ann. § 17.01 *et seq.* (Vernon 1987 & Supp.1994).

the firm. O'Donnell is judge of the 301st District Court of Dallas County and presided over the prior suit.

On September 10, 1991, Ronald filed this cause of action under the Act, alleging that the appellees forced him into the expense and emotional distress of a trial. The appellees answered and all parties filed motions for summary judgment on Ronald's action. In addition, Carol, Blassingame, and the firm filed counterclaims, alleging that Ronald's action was groundless, brought in bad faith, and brought for the purpose of harassment. In three partial summary judgments, the trial court denied Ronald's motion and granted the appellees' motions. Then, after an evidentiary hearing on the counterclaims, the trial court rendered judgment in favor of Carol, Blassingame, and the firm for reasonable attorney's fees.

By his first and third points of error, Ronald contends the trial court erred in granting Carol's, Blassingame's, and the firm's motions for summary judgment on his action, and denying his motion for summary judgment and motion for reconsideration because he established every element of his deceptive trade practice claim as a matter of law. These contentions are without merit.

■ In order to recover on a deceptive trade practice claim, the plaintiff must show (1) he is a consumer, (2) the defendant committed a false, misleading, or deceptive act or practice, and (3) such false, misleading, or deceptive act or practice constituted a producing cause of the plaintiff's actual damages. *Miller v. Soliz,* 648 S.W.2d 734, 739 (Tex.App.–Corpus Christi 1983, no writ). The issue that was properly before the trial court and is now presented to this Court is whether Ronald was a consumer as defined in the Act.

■ Consumer status under the Act is a question of law to be determined by the court. *Hedley Feedlot, Inc. v. Weatherly Trust,* 855 S.W.2d 826, 831 (Tex.App.–Amarillo 1993, writ denied). The Act defines consumer as an individual "of this state who seeks or acquires by purchase or lease, any goods or services." Tex.Bus. and Comm. Code § 17.45(4) (Vernon 1987). Thus, in or-

der for the party bringing an action under the Act to establish consumer status, the individual (1) must have sought or acquired services or goods by purchase or lease, and (2) the goods or services purchased or leased must be the basis of the complaint. *Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 351–52 (Tex.1987).

■ There is no requirement of privity between a plaintiff and defendant in order to establish a cause of action under the Act. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540–41 (Tex.1981). Nevertheless, the consumer must be involved in the transaction at least to the extent that he seeks to enjoy benefits as a third party of the transaction involving the purchase or lease of a good or service. *Flenniken v. Longview Bank and Trust Co.,* 661 S.W.2d 705, 707–08 (Tex.1983).

■ Here, Carol swore by affidavit that she never provided or promised services to Ronald, and that he was not a consumer as to her. In his affidavit, Blassingame averred that he represented Carol against Ronald in the prior suit. He claimed that he never represented Ronald or received any benefit from him for advice given. He also stated that Ronald was not a consumer as to him. Hence, Carol, Blassingame, and the firm did not provide any goods or services to Ronald. Neither did Ronald seek or acquire any goods or services by purchase or lease from Carol, Blassingame, or the firm.

Ronald contends he was forced to acquire the services of all the appellees by being cited to appear in the prior suit. This argument, however, is inconsequential because Ronald simply acquired no services, voluntarily or involuntarily, and entered into no transaction by purchase or lease with any appellee. Additionally, Ronald was not involved in any purchase or lease transaction to the extent that he sought to enjoy benefits from the contractual relationship between Carol, Blassingame, and the firm. Consequently, Ronald failed to establish an essential element of his cause of action because the record discloses that he was not a consumer as a matter of law. Points one and three are overruled.

By his second point of error, Ronald contends the trial court erred in accepting O'Donnell's judicial immunity defense, motion for summary judgment, and motion to quash his subpoena because O'Donnell's acts were non-judicial. This contention is also without merit.

Under the Texas Constitution, state district courts are courts of general jurisdiction. Tex. Const. art. V § 8. A judge has immunity when acting in the course of a judicial proceeding over which he has jurisdiction. *Turner v. Pruitt*, 161 Tex. 532, 342 S.W.2d 422, 423 (1961). The doctrine of absolute judicial immunity encompasses all judicial acts unless such actions clearly fall outside the judge's subject-matter jurisdiction. This is so even where the judge is accused of acting corruptly or maliciously. *Spencer v. City of Seagoville*, 700 S.W.2d 953, 957–58 (Tex.App.–Dallas 1985, no writ).

The Texas Family Code provides that an order setting the terms and conditions for conservatorship of, support of, or access to a child may be modified by filing a motion in the court having continuing, exclusive jurisdiction of the suit affecting the parent-child relationship. Tex.Fam.Code Ann. § 14.08(a) (Vernon 1986). The Family Code also provides that any party affected by the prior decree may file such a motion. *Id.* Furthermore, in determining the jurisdiction of the trial court, allegations made in good faith in the petition are determinative of the cause of action. *Brannon v. Pacific Employers Ins. Co.*, 148 Tex. 289, 224 S.W.2d 466, 469 (1949).

Here, the record shows that Carol filed a motion to modify the divorce decree in the court of continuing jurisdiction. By her motion, Carol sought to modify and clarify the medical coverage and visitation provisions of her's and Ronald's prior divorce decree. Carol sought an order requiring Ronald to pick up the children or, alternatively, an order requiring him to give her notice if he had no intention of exercising visitation or if visitation was to be altered. Carol alleged that disputes had arisen between her and Ronald regarding interpretation of visitation and medical insurance provisions. Under these pleadings, Carol had standing to ask for a modification of the divorce decree, and the district court had subject-matter jurisdiction over any modification of its prior order involving visitation. Thus, the trial court had subject-matter jurisdiction over the motion to modify, and O'Donnell acted within his jurisdictional authority. Consequently, O'Donnell established the defense of judicial immunity as a matter of law and was entitled to summary judgment upon that ground.

We next address whether the trial court erred in quashing the subpoena for O'Donnell to testify on the counterclaims. A judge, like everyone else, must testify to relevant facts within his personal knowledge when summoned to do so. *Joachim v. Chambers*, 815 S.W.2d 234, 239 (Tex.1991). However, in Ronald's response to the motion to quash, he plead that he wanted to ask O'Donnell whether he knew visitation was not a duty. Assuming *arguendo* O'Donnell knew visitation was only a privilege, such evidence is irrelevant to whether the instant action against Carol, Blassingame, and the firm was groundless and brought in bad faith. The alleged bad faith of Ronald has no relationship to O'Donnell's knowledge that he was making an erroneous oral ruling in the former action. Nor can O'Donnell's knowledge show a lack of groundlessness, bad faith, or harassment on Ronald's part. Consequently, point two is overruled.

By his fourth point of error, Ronald contends the trial court erred in denying his legal and factual defenses to the counterclaims because the counterclaims were not properly presented to the court and there was no evidence or insufficient evidence to prove the counterclaims. Ronald also contends he was denied his federal and state constitutional rights of due process and due course of law at the evidentiary hearing on the counterclaims. We disagree.

We first address Ronald's contentions that the counterclaims were not properly presented to the trial court, and he was denied his federal and state constitutional rights of due process and due course of law. In that regard, Ronald asserts the counterclaims were presented as though they were "stand alone" motions not included in the pleadings. He further argues that the trial court terminated

the evidentiary hearing on the counterclaims before he completed his cross-examination of the defendant's witnesses and before he had the opportunity to call his own witnesses.

■ In order to preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion; state the specific grounds thereof; and obtain a ruling. Tex.R.App.P. 52(a). One should not be permitted to neglect to complain about, waive, or consent to an error at trial and then surprise the opponent on appeal by stating his complaint for the first time. *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex.1982). Neither may a party take a position on appeal that is not presented to the trial court. *Mandell v. Hamman Oil and Refining Co.*, 822 S.W.2d 153, 162 (Tex.App.–Houston [1st Dist.] 1991, writ denied); *Motor 9, Inc. v. World Tire Corp.*, 651 S.W.2d 296, 301 (Tex.App.–Amarillo 1983, writ ref'd n.r.e.).

■ Here, Ronald failed to object to the trial court's actions on the asserted grounds. Consequently, Ronald is not permitted to raise these contentions for the first time on appeal.

■ We next consider Ronald's contention that there was no evidence or insufficient evidence to prove the counterclaims. In reviewing a no evidence point, we must look at the record in the light most favorable to the finding to see if any probative evidence or any reasonable inferences therefrom support the finding, while at the same time disregarding all evidence or reasonable inferences therefrom to the contrary. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981). In reviewing a factually insufficient evidence point, we must look at the entire record to determine if probative evidence exists to support the finding. If it does, we must determine whether the evidence supporting the finding is so weak or the answer so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

■ By their counterclaims, Carol, Blassingame, and the firm sought attorney's fees and court costs pursuant to section 17.50(c) of the Act. Section 17.50(c) provides:

> On a finding by the court that an action under this section was groundless and brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs.

In that regard, an award must be based on a finding by the court, *Leissner v. Schott*, 668 S.W.2d 686 (Tex.1984), and requires the court to determine the existence of groundlessness, bad faith and harassment. *Donwerth v. Preston II Chrysler–Dodge*, 775 S.W.2d 634, 637 (Tex.1989).

■ We first determine whether Ronald's action was groundless, brought in bad faith, or brought for the purpose of harassment. A groundless action is defined as one having no basis in law or fact and not warranted by a good faith contention for modification, reversal, or extension of existing law. *Id.* at 637. To establish bad faith, it must be shown the claim was motivated by a malicious or discriminatory purpose. *Central Texas Hardware v. First City*, 810 S.W.2d 234, 237 (Tex.App.–Houston [14th Dist.] 1991, writ denied).

■ Here, Bob Osburn, attorney for Blassingame and the firm, testified that the action was groundless, brought in bad faith or for purposes of harassment. Osburn believed Ronald's action was the worse abuse of process he had observed since the Act was passed. Osborn testified that, as late as the week before the hearing on the counterclaims, Ronald's attorney asked him if he was tired of the case. Ronald's attorney suggested that if Osburn waived the $1,700 in attorney's fees awarded against Ronald in the prior suit, Ronald would dismiss the claim. Osburn believed the instant suit was filed to wear him down so he would agree not to enforce the $1,700 attorney's fees award. Osburn believed the proper remedy in the prior suit was an appeal.

Leland Ammons, Carol's attorney, testified that Ronald offered to dismiss Carol from the lawsuit a week before the trial on the counterclaims. Ammons believed it was poor judgment to bring the prevailing party from

the prior suit into the instant suit under the Act. Ammons stated that even if Ronald had a claim against the others, he certainly had no claim against Carol.

Under these circumstances, evidence exists that the action was brought for the malicious purpose of preventing Blassingame and the firm from collecting on another judgment. There is evidence that Ronald did not have a valid claim against Carol and that his claim under the Act was an abuse of process. Furthermore, we determined that Ronald failed to establish consumer status as a matter of law. Thus, he had no valid claim against any of the appellees, and the trial court was entitled to infer from the evidence that Ronald's action was groundless, brought in bad faith, or brought for the purpose of harassment. *Ramo, Inc. v. English*, 500 S.W.2d 461, 467 (Tex.1973).

We next determine whether there is legally and factually sufficient evidence to support the finding that the awarded attorney's fees were reasonable and necessary. In its judgment, the trial court awarded Blassingame and the firm:

> reasonable costs and expenses incurred in defending this action in the amount of $11,500.00 for trial, plus an additional $3,500.00 if an appeal is made to the Court of Appeals, plus an additional $3,500.00 if an application for writ of error is filed, plus an additional $3,500.00 if application for writ of error is granted.

The trial court awarded Carol:

> reasonable costs and expenses incurred in defending this action in the amount of $2,000.00, plus an additional $2,500.00 if an appeal is made to the Court of Appeals, plus an additional $2,500.00 if an application for writ of error is filed, plus an additional $2,500.00 if an application for writ of error is granted.

Osburn testified he was an experienced attorney, and that Blassingame agreed to pay him for his services. In several pages of testimony, he gave an account of the instant litigation's history. He identified the pleadings and discovery tools filed by Ronald and discussed the pleadings and documents he was required to file in response. Osburn testified that he spent 115 hours in defending the suit and said his normal hourly rate was $100. He thought a reasonable charge for his work in the cause was $11,500. If the case were appealed to the court of appeals, Osburn thought it would cost $7,500 in legal fees. He testified that to respond to an application for writ of error to the Texas Supreme Court it would cost an additional $3,500. If writ of error were granted, Osburn stated the cost would be an additional $3,500.

Ammons testified that he was retained to defend Carol in the action. He reported that $2,000 would be a reasonable and necessary amount for trial representation. He further testified that $2,500 for appeal to the court of appeals, $2,500 if application for writ of error were filed, and $2,500 if application for writ of error were granted would be reasonable and necessary fees to protect Carol's legal rights. Thus, legally and factually sufficient evidence exists to support the judgment for attorney's fees in favor of the counterclaimants.

Ronald also contends that no attorney's fees incurred by Carol after January 1992 should be awarded. Ronald says the award to Carol is erroneous because he would have dismissed her from the suit had she answered interrogatories stating that she did not know visitation was not a duty. However, statements made at trial by Ronald's counsel that he would have dismissed Carol had she correctly answered his interrogatories is unsworn testimony and not proof of those facts. *Ruth v. Imperial Ins. Co.*, 579 S.W.2d 523, 525 (Tex.Civ.App.– Houston [14th Dist.] 1979, no writ). Consequently, point of error four is overruled.

In point of error five, Ronald contends the trial court erred in permitting Carol to assert her attorney-client privilege after the filing of her counterclaim. In this point, Ronald contends that the trial court erroneously permitted Carol to affirmatively assert against him the attorney-client privilege between her and Blassingame on her counterclaim. We disagree.

Here, Ronald sought to admit evidence, through Carol's testimony, that she knew her

modification claim was erroneous. Assuming *arguendo* Carol knew that part of her pleadings were insupportable under the law, such evidence is irrelevant to whether the instant action against her was groundless and brought in bad faith. Ronald's bad faith in the instant action has no relationship to any bad faith on Carol's part in the former action. Point of error five is overruled.

By his sixth point of error, Ronald contends the trial court erred in signing the findings of fact and conclusions of law because they did not contain fact findings or legal conclusions, and in failing to respond to his requested findings of fact and conclusions of law. We disagree.

 Under this point, Ronald asks us to determine that the findings and conclusions are a nullity. In that regard, he contends that (1) findings one through six are not fact findings but are mere recitations of events in the progress of the prior and instant suits, (2) findings seven and eight are not supported by the evidence, (3) finding nine is nothing more than a reference to chapter nine of the Civil Practice and Remedies Code, (4) findings ten and eleven are mere recitations of Osburn's and Ammon's testimony from the hearing on the counterclaims, and (5) the conclusions of law are merely a repetition of the elements of the final judgment. Contention two has already been addressed and resolved against Ronald in our determination of point of error four. The other contentions fail to present reversible error.

 Ronald also argues that the trial court erred in failing to respond to his requested findings and conclusions. However, where the appellant fails to timely request additional or amended findings within ten days after the court files its original findings, the requesting party waives the right to complain on appeal that the findings were not full and complete, or that the court failed to enter additional findings of fact. *Cities Services Co. v. Ellison,* 698 S.W.2d 387, 390 (Tex.App.--Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Fettig v. Fettig,* 619 S.W.2d 262, 265 (Tex.Civ.App.--Tyler 1981, no writ).

 Here, after judgment was signed on March 31, 1993, Ronald timely filed a request for findings of fact and conclusions of law, and timely notified the court that they were past due. Tex.R.Civ.P. 297. The trial court timely filed its findings on April 28, 1993. *Id.* Thereafter, Ronald untimely filed his request for additional or amended findings of fact and conclusions of law on May 17, 1993. Tex.R.Civ.P. 298. Consequently, Ronald waived any complaint about the trial court's failure to respond to his requested findings of fact and conclusions of law. Point of error six is overruled.

Accordingly, the judgment of the trial court is affirmed.