# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00633-CV

**Robert Hugh Goodfellow, Appellant**

**v.**

**Shari Angela Masson Goodfellow, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY**
**NO. 99-1298-FC1, HONORABLE KEVIN HENDERSON, JUDGE PRESIDING**

---

This is an appeal of a property division and a spousal maintenance award in a divorce case. The parties reached a partial mediated settlement agreement on the issues of conservatorship, visitation, and child support for their six minor children. Issues surrounding the division of the community estate and spousal maintenance proceeded to trial before the court. Appellant Robert Hugh Goodfellow challenges the court=s property division, arguing that it improperly awarded his wife, appellee Shari Angela Masson Goodfellow, a disproportionate share of the community estate. He complains of the court=s award of post-divorce spousal maintenance, as well as the finding that he was guilty of cruel treatment. He also complains of the failure to quantify the value of the property divided. We will affirm the judgment of the county court at law.

**FACTUAL BACKGROUND**

The parties were married for twenty-one years and had six children. When Shari filed for divorce in 1999, the children ranged in age from sixteen years to three years. The parties eventually agreed that the two older children, by then sixteen and eighteen-year-old boys, would live with Robert, and the four younger children would live with Shari. Robert would pay Shari approximately $1,500 a month as child support. The court adopted the parties= agreement. Testimony was taken on the remaining issues in December 2000 and February 2001.

Shari graduated high school and attended two years of college in Canada, but did not receive a degree. She was twenty when she married Robert. She worked as a secretary before the birth of their first child, then became solely a homemaker. During the marriage, Shari home-schooled their three youngest children. She was employed briefly outside the home in 1999 as a grocery checker for H-E-B earning $7.50 an hour. At the time of the divorce, Shari was planning to attend college full time and anticipated that she needed two years to complete a college degree. She had already been accepted into a work-study program at Austin Community College. Robert was earning $81,273 at the time of divorce, and he expected to be reviewed for salary increases on an annual basis. Robert testified that in his opinion Shari was capable of earning $12 to $14 an hour as an administrative assistant.

The couple=s primary asset was their house in Leander. Robert valued the house at $260,000; Shari valued it at $215,000. The house is approximately 2,400 square feet, and Robert described it as Aa very nice house.@ Their mortgage balance was $24,990, making their equity in the house approximately $194,000 to $235,000. Robert urged the court to sell the house and divide the

2

proceeds evenly. Shari urged that she be awarded the house, and in return she was willing to waive any community interest in Robert=s retirement benefits.[1]

Shari testified that they had lived in the house for twelve years and that it was the only home her younger children had known. She felt it was important to the children=s stability that they be allowed to remain in their home. Robert testified that in his opinion the children had not Abonded@ with the house. When asked where he expected Shari and the four younger children to live after the divorce if the house was sold, Robert testified that was a Achoice@ Shari would have to make if she wanted to be independent.

Shari pleaded cruelty and insupportability as grounds for divorce. In his testimony, Robert denied that he was a Acontrol freak,@ but admitted that he did have problems with Acontrol.@ He admitted that he was aware that Shari felt he was overly controlling of her and their finances. He admitted that he and Shari disagreed frequently about the children. Robert acknowledged conduct that Shari complained hurt her Adeeply@ and damaged their relationship and her Atrust@ in him. He admitted that his Aanger and resentment@ caused problems with their relationship. He admitted that he physically pushed Shari when she tried to assert herself. Shari testified that she was obtaining counseling from a battered women=s center. Robert resisted Shari=s attempt to obtain a divorce. He testified that he considered divorce Asinful.@ During the pendency of the divorce, Robert attempted to

---

[1] Instead, the trial court awarded Shari the house and fifty percent of Robert=s retirement benefits. We will assume as true Robert=s contention that Shari received between eighty to eighty-five percent of the community estate under the trial court=s division.

3

gain access to the house without permission on three different occasions. Shari testified that she was afraid for her physical safety.

There was also undisputed evidence that, after Shari filed for divorce, Robert liquidated various community assets and unilaterally spent relatively large sums of cash while the divorce was pending. For example, the couple owned 1069 shares of stock in Manulife Financial, a publically traded company, which Robert liquidated. Shari estimated that the shares were worth $28 each, or approximately $28,000. Robert testified that the shares were Canadian, and when the sales proceeds were converted to dollars, he received a total of only $14,500. He listed the shares on his inventory as having a value of zero because he had sold them and spent the proceeds.

Furthermore, he spent the insurance proceeds he received from a wrecked Toyota automobile after the divorce was filed. He testified that he recovered insurance proceeds of $5,500 for the loss; Shari, on the other hand, estimated he received $7,000. At the time of the December 2000 hearing, he was driving an old automobile. In addition, he had $5,500 in a brokerage account with 1-800-Mutuals. He admitted that he liquidated the account and spent those proceeds as well. At the December hearing, he claimed to have only $365 in his bank account.

At the time of the February 2001 hearing, Shari had incurred attorney=s fees of approximately $30,000, of which she had paid $8,000, leaving a balance of $22,000. Each party was ordered to pay their own attorney=s fees. The children=s attorney *ad litem* requested fees in the amount of approximately $5,000, of which each party was ordered to pay half.

## DISCUSSION

### *Cruel Treatment*

4

By his fourth issue, Robert challenges the sufficiency of the evidence to support the trial court=s finding that Robert was guilty of cruel treatment. He claims this finding was harmful because it is Athe only possible justification@ for the Adisproportional division of the community estate.@ Robert does not specify whether he is challenging the legal or factual sufficiency of this finding. Nevertheless, we will review the record under both standards.

In an appeal from a bench trial, an appellate court reviews findings of fact and conclusions of law in the same manner as jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When considering a legal sufficiency point of error, we will consider only the evidence that tends to support the finding and disregard all evidence and inferences to the contrary. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987); *Echols v. Olivarez*, No. 03-01-00410-CV, 2002 Tex. App. LEXIS 6283, at *3 (Tex. App.CAustin Aug. 30, 2002, no pet. h.). We will sustain a legal sufficiency challenge only when there is no probative evidence of a vital fact necessary to the judgment. If any probative evidence supports the judgment, the finding will be sustained. *Lindsey v. Lindsey*, 965 S.W.2d 589, 591 (Tex. App.CEl Paso 1998, no pet.).

In contrast, we will review a finding for factually sufficient evidence by examining all the evidence presented and determining whether the evidence is so weak as to render the finding manifestly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Echols*, 2002 Tex. App. LEXIS 6283, at *4. We will not substitute our judgment for that of the trial court if there is sufficient competent evidence of probative force to support the trial court=s finding. *Echols*, 2002 Tex. App. LEXIS 6283, at *4.

5

Section 6.002 of the Texas Family Code authorizes divorce if Aone spouse is guilty of cruel treatment toward the complaining spouse of a nature that renders further living together insupportable.@ Tex. Fam. Code Ann. ' 6.002 (West 1998). Cruelty is not confined to physically violent behavior. *McCullough v. McCullough*, 36 S.W.2d 459, 462 (Tex. Comm=n App. 1931, opinion adopted). ACruel treatment@ in divorce proceedings also includes injury to a party=s feelings and sensibilities *Lindsey v. Lindsey*, 228 S.W.2d 878, 882 (Tex. Civ. App.C Amarillo 1950, no writ). It has also been described to include Aany outrages upon the feelings or any infliction of mental pain or anguish,@ *Daughtry v. Daughtry*, 312 S.W.2d 957, 959 (Tex. Civ. App.C Amarillo 1958, no writ), or Awillful persistent infliction of unnecessary suffering, whether in realization or apprehension, whether of mind or body.@ *Gentry v. Gentry*, 394 S.W.2d 544, 546 (Tex. Civ. App.C Corpus Christi 1965, no writ). Acts that occur after separation may be considered in determining cruelty. *Henry v. Henry*, 48 S.W.3d 468, 474 (Tex. App.C Houston [14th Dist.] 2001, no pet. h.). AInsupportability@ has been defined according to its ordinary meaning as Aincapable of being borne, unendurable, insufferable, intolerable.@ *Id.*, at 473-74; *Cantwell v. Cantwell*, 217 S.W.2d 450, 453 (Tex. Civ. App.C El Paso 1948, writ dism=d). Trivial disagreements during a marriage do not amount to cruelty. *Henry*, 48 S.W.3d at 474.

Shari=s testimony was the primary source of direct evidence on this issue. Her main complaint was that Robert was exceedingly domineering, controlling, and emotionally abusive. She testified that he was secretive and controlled all the family=s finances. She was unaware of the amount of money Robert earned. She had to account to him for every cent she spent. She said that Robert went through her receipts and would criticize her if she paid too much per gallon for gasoline. He

eventually forbade her from writing checks or using credit cards. She recounted one instance when she was stranded after running out of gasoline and had no money or credit cards; she had to call Robert to come get her.

She testified that he criticized her grocery shopping and finally forbade her from shopping, and insisted on doing it himself. She prepared the meals with whatever he bought. He required her to wash and iron his shirts because he felt that commercial cleaners charged too much. She said he even limited her to two baths a week because he felt that hot water was too expensive.

Robert=s job required him to travel a great deal. Shari testified that she was not allowed to know where Robert was when he was away from home. On Saturdays, he would leave for hours at a time without explanation. He rarely spent time with the children and considered housework her responsibility.

She recounted that a school counselor had recommended that one of their sons attend private school, but Robert refused to pay for it. Consequently, Shari went to work at an H-E-B store to earn enough to send their son to private school. She said that Robert resented it and began increasing her workload at home. He made repeated telephone calls to her check-out stand at work. He physically went to her workplace to check up on her. One night when leaving work, Robert frightened her when she found him hiding in her car. She said that he made an unfounded allegation that she was unfaithful to him. She testified that Robert demanded that she turn over to him her wages from H-E-B.

Shari complained that Robert habitually insulted and belittled her. Over the years, she claimed he stripped her of self-esteem. He would not allow her to have friends visit their home. She

7

testified that the emotional abuse existed for years, but that it got progressively worse and escalated in the spring of 1999, when on two occasions Robert physically pushed and hurt her. In addition, she said that Robert forced her to have sex against her will. The couple attempted marriage counseling ten to twelve times over the years, but Shari said that Robert was uncooperative and stopped attending.

We hold that the foregoing constitutes legally sufficient evidence to support the trial court=s finding that Robert was guilty of cruel treatment. The trial court, acting as trier of fact, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Burtch v. Burtch*, 972 S.W.2d 882, 888 (Tex. App.CAustin 1998, no pet.). Our conclusion does not change when we consider all the evidence presented for factual sufficiency. Robert disputed little of the conduct about which Shari complained; he simply claimed it was justified or provoked. We overrule Robert=s fourth issue.

**Community Property Division**

The crux of Robert=s second issue is that the trial court abused his discretion in granting to Shari a disproportionate share of the parties= community estate. The family code accords trial courts broad discretion in dividing marital estates by providing that the community estate be divided Ain a manner that the court deems just and right.@ Tex. Fam. Code Ann. ' 7.001 (West 1998). The division of the community estate is not required to be equal, and the court may consider many factors in making the division. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981); *Schuster v. Schuster*, 690 S.W.2d 644, 645 (Tex. App.CAustin 1985, no writ). The controlling issue is whether the property division is Ajust and right.@ *Hill v. Hill*, 971 S.W.2d 153, 155 (Tex. App.CAmarillo

8

1998, no pet.). When reviewing a property division, an appellate court will assume that the trial court acted within its discretion in dividing property. *Vallone v. Vallone*, 644 S.W.2d 455, 460 (Tex. 1982). The trial court=s decision will not be disturbed unless a clear abuse of discretion is shown.[2] *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974). Even upon such a showing, a judgment will not be reversed unless the error materially affected the just and right division. *Jacobs v. Jacobs*, 687 S.W.2d 731, 732-33 (Tex. 1985).

Nevertheless, there must be a reasonable basis for an unequal division of community property. *O=Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.CAustin 2002, no pet.). Trial courts consider different factors in making a property divisionCincluding the spouses=relative ages, education, business opportunities, earning abilities, physical and financial conditions, size of the separate estates, nature of the property, and the benefits that the spouse who did not cause the break up would have received had the marriage continued. *Id.*

This record establishes a number of circumstances that justify awarding a disproportionate share of the community estate to Shari. First, a disparity in the financial condition and earning capacities of the parties is an important factor in dividing their estate. *Murff*, 615 S.W.2d at 699; *Phillips v. Phillips*, 75 S.W.3d 564, 574 (Tex. App.CBeaumont 2002, pet. denied). Second, one spouse=s future need for further support may be considered in the division. *Simpson v. Simpson*,

---

[2] A trial court abuses its discretion if it acts unreasonably or arbitrarily, without reference to applicable legal rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

9

727 S.W.2d 662, 664 (Tex. App.CDallas 1987, no writ). Third, a court may consider one spouse=s wrongful dissipation of community assets when dividing a marital estate. *See Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex. 1998); *Murff*, 615 S.W.2d at 699. Fourth, fault may be considered by a court in making a property division. *Young v. Young*, 609 S.W.2d 758, 762 (Tex. 1980). Finally, a court may consider payments made to attorneys from the community estate. *Henry v. Henry*, 48 S.W.3d 468, 478 (Tex. App.CHouston [14th Dist.] 2001, no pet.); *Eikenhorst v. Eikenhorst*, 746 S.W.2d 882, 890 (Tex. App.CHouston [1st Dist.] 1988, no writ). The trial court did not abuse his discretion in dividing the community estate of the parties. There is sufficient evidence on each of these factor to support the trial court=s disproportionate award. Robert=s second issue on appeal is overruled.

### *Post-Divorce Spousal Maintenance*

Robert=s third issue complains that the trial court abused his discretion in awarding Shari spousal maintenance of $1,000 per month for two years. Questions surrounding the granting of post-divorce spousal maintenance are likewise reviewed for an abuse of discretion. *Lopez v. Lopez*, 55 S.W.3d 194, 198 (Tex. App.CCorpus Christi 2001, no pet.); *Alexander v. Alexander*, 982 S.W.2d 116, 118 (Tex. App.CHouston [1st Dist.] 1998, no pet.). Reviewing a grant of post-divorce spousal maintenance for factual and legal sufficiency of the evidence becomes a part of the abuse-of-discretion review. *In re Hale*, 975 S.W.2d 694, 697 (Tex. App.CTexarkana 1998, no pet.). We will not disturb a trial court=s decision to award post-divorce spousal maintenance if there is some evidence of probative value supporting the decision or if reasonable minds could differ about the result. *Lopez*, 79 S.W.3d at 198. In other words, there is no abuse of discretion if some evidence supports the trial court=s decision. *Hale*, 975 S.W.2d at 697.

The legislature in 1997 empowered Texas courts to award future periodic payments from future income for the support of a former spouse. *See* Tex. Fam. Code Ann. ' 8.002 (West 1998). The legislative intent of section 8.002 was to provide temporary rehabilitative support for a spouse whose earning capacity is insufficient, having deteriorated over time while engaged in homemaking, for example. *O=Carolan*, 71 S.W3d at 533. There is an initial presumption that spousal maintenance is not warranted unless the spouse seeking maintenance diligently attempts to become self-sufficient. *Id.* ' 8.004.

A former spouse-to-be=s eligibility for spousal maintenance is governed by section 8.002(2) of the family code, which provides in pertinent part:

> In a suit for dissolution of marriage . . ., the court may order maintenance for either spouse only if:
>
> . . . .
>
> (2)  the duration of the marriage was 10 years or longer, the spouse seeking maintenance lacks sufficient property, including property distributed to the spouse under this code, to provide for the spouse=s minimum reasonable needs, as limited by Section 8.005,[3] and the spouse seeking maintenance:
>
> . . . .
>
>   (C)  clearly lacks earning ability in the labor market adequate to provide support for the spouse=s minimum reasonable needs, as limited by Section 8.005.

---

[3] Section 8.005(a) provides that maintenance may not be ordered for more than three years and it must be limited to the shortest period necessary to allow the receiving spouse time to obtain Aappropriate employment or develop[] an appropriate skill,@ unless the receiving spouse=s ability to work is Asubstantially or totally diminished because of@ disability, child-rearing duties or Aanother compelling impediment to gainful employment.@

11

*Id*. ' 8.002. The amount of maintenance cannot exceed the lesser monthly payment of $2,500 or twenty percent of the spouse=s average monthly gross income. *Id.* ' 8.006 (West 1998).

The record amply supports Shari=s eligibility for post-divorce maintenance payments of $1,000 monthly for two years while she pursues a college degree and job training. Shari=s inability to earn enough income to provide for herself and her children=s minimum reasonable needs is clear, even considering the court-ordered child support. Shari has only worked for a few weeks in a grocery store for $7.50 per hour since the birth of her first child. The trial court could reasonably conclude from the evidence that her wage-earning capacity was not adequate to reasonably subsist in Williamson County with four children. The court was entitled to consider the twenty-one years Shari spent as a homemaker raising six children, even home-schooling some, as a significant contribution to the community and to Robert=s higher wage-earning power. We hold that the trial court did not abuse his discretion in ordering Robert to pay post-divorce spousal maintenance to Shari for two years. *See Amos*, 79 S.W.3d at 749-51; *Lopez*, 55 S.W.3d at 197-99; *Alexander*, 982 S.W.2d at 117-19. Robert=s third issue on appeal is overruled.

*Findings of Fact and Conclusions of Law*

By his first issue, Robert complains that the trial court erred in failing to make additional findings of fact and conclusions of law. He specifically complains of the failure to find the specific market value of the couple=s various items of community property, particularly the house. The evidence consisted solely of Robert and Shari=s opinions of the worth of their house. Other than their inventories, there was no

12

evidence introduced of the specific values of other community property. To the extent that no evidence or no conflicting evidence was introduced regarding values of specific property, there was no error.

Effective September 1, 2001, the legislature amended the family code and added section 6.711. *See* Acts of May 10, 2001, 77th Leg., R.S., ch. 297, ' 1, 2001 Tex. Gen. Laws 559, eff. Sept. 1, 2001 (codified at Tex. Fam. Code Ann. ' 6.711 (West Supp. 2003)). The code now requires courts to file findings of fact and conclusions of law and value each piece of community property in the parties= estate if requested to do so. Section 6.711 expressly provides:

(a)   In a suit for dissolution of marriage in which the court has rendered a judgment dividing the estate of the parties, *on request by a party, the court shall state in writing* its findings of fact and conclusions of law concerning:

(1)   the characterization of each party=s assets, liabilities, claims, and offsets on which disputed evidence has been presented; and

(2)   the value or amount of the community estate=s assets, liabilities, claims, and offsets on which disputed evidence has been presented.

(B)   *A request for findings of fact and conclusions of law under this section must conform to the Texas Rules of Civil Procedure.*

*Id*. (emphasis added).[4]

---

[4]   The amendment provides that it applies to Aa suit for dissolution of marriage pending on [September 1, 2001] or filed after that date.@ *See* Acts of May 10, 2001, 77th Leg., R.S., ch. 297, ' 2, 2001 Tex. Gen. Laws 559, eff. Sept. 1, 2001. The act went into effect after Robert had made his request

for findings of fact and conclusions of law. We assume, without deciding, that section 6.711 was applicable at the time the trial court filed its findings on September 4.

Robert failed to comply with the pertinent rules of civil procedure in making his request for additional findings. The final judgment in this case was signed on August 8, 2001. Robert timely filed a request for findings of fact and conclusions of law on August 16. *See* Tex. R. Civ. P. 296 (Request must be Afiled within twenty days after judgment is signed.@). The court=s findings were due to be filed on September 5. *See* Tex. R. Civ. P. 297 (Findings and conclusions must be filed Awithin twenty days after a timely request is filed.@). The record reflects that the trial court filed findings and conclusions on September 4, Robert filed a notice of past due findings of fact and conclusions of law on September 12, Robert filed a request for additional findings of fact and conclusions of law on September 25, and the trial court filed no additional findings.

Robert=s request for additional findings and conclusions was untimely. *See* Tex. R. Civ. P. 298 (Request for additional findings and conclusions Ashall be made within ten days after the filing of the original findings and conclusions by the court.@). Thus, he cannot be heard to complain on appeal that the findings and conclusions are incomplete. *See McDuffie v. Blassingame*, 883 S.W.2d 329, 337 (Tex. App.CAmarillo 1994, writ denied). In his request, Robert alleged that the trial court failed to notify him of the filing of the original findings and conclusions, as required by rule 297. Tex. R. Civ. P. 297 (AThe court shall cause a copy of its findings and conclusions to be mailed to each party in the suit.@). He alleges that on September 21 his attorney Alooked in the Court=s file and discovered that the Court had signed@ findings and conclusions on September 4, which were filed the same day. In his *request*, Robert asserted that, because the court failed to provide notice of the findings, Athis request is timely.@ The record is otherwise

15

silent as to whether either Robert or his counsel was notified of the filing of the findings and conclusions. The court=s docket sheet contains no entry regarding notice of filing.

Robert, as appellant, has the burden to demonstrate reversible error on the record. Tex. R. App. P. 33.1(a). His recitation in his request for additional findings and conclusions and in his brief that he did not receive notice of the filing is not sufficient to preserve error. He neither requested a hearing on his allegation nor supported it by affidavit. He did not request a ruling from the trial court on his Acomplaint,@ and there was no refusal by the trial court to consider it. Tex. R. App. P. 33.1(a)(2)(A), (B). Because Robert filed a motion for new trial, he had ninety days from August 8 to give notice of appeal. *See* Tex. R. App. P. 26.1(a)(1). He thus had ample time to present his complaint to the trial court. By failing to do so, he waived any complaint that he did not receive notice of the filing of the trial court=s findings and conclusions. *Cf. Texas Sling Ltd. v. R.B. Foods, Inc.*, 82 S.W.3d 644, 649 (Tex. App.CSan Antonio 2002, no pet. h.) (affirming trial court=s refusal to set aside dismissal where appellant failed to offer proof supporting allegation of no notice of dismissal-docket setting). Because Robert=s request for additional findings and conclusions did not comply with the Texas Rules of Civil Procedure, the trial court was not required to make a specific finding as to the value of the parties= community property, including the house. *See* Tex. Fam. Code Ann. ' 6.711(b).

Our result would be the same even if Robert had preserved his alleged error, because we hold that Robert was not harmed by the trial court=s failure to make additional findings and conclusions. The record contains sufficient evidence to support the trial court=s unequal division of the property. Robert=s primary argument is that the trial court implicitly and incorrectly determined that the house was worth

16

$215,000 (Shari=s valuation), as opposed to $260,000 (Robert=s valuation). He does not explain how the valuation of the community estate at $45,000 less than he contended caused error. We have already determined that the trial court did not abuse its discretion in disproportionately dividing the marital estate. Assuming, without deciding, that Robert=s valuation is correct, he is not entitled to reversal. AA trial court=s failure to make findings is not harmful error if >the record before the appellate court affirmatively shows that the complaining party suffered no injury.=@ *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (quoting *Cherne Indus. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989)).

Robert=s position ignores the countervailing equities we have outlined above that amply support the disproportionate division of the community property, whatever the exact valuations. He ignores the undisputable disparity between his future earning potential and Shari=s. *See id.* Finally, Robert overlooks Shari=s testimony detailing Robert=s cruel treatment. We hold that any error in the trial court=s failure to make findings of fact valuing each piece of community property in the parties= estate was harmless. Robert=s first issue on appeal is overruled.

## CONCLUSION

Finding no reversible error, we affirm the county court at law=s final judgment.

_____

Lee Yeakel, Justice

Before: Chief Justice Aboussie, Justices B. A. Smith and Yeakel

17

Affirmed

Filed:   December 12, 2002

Do Not Publish