NO. 07-03-0401-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MARCH 29, 2004



______________________________




IN THE INTEREST OF Z.J., A MINOR CHILD






_________________________________



FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2001-516,050; HONORABLE BLAIR CHERRY, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

OPINION


 Colleen Jiminez appeals from an order following a bench trial terminating her
parental rights to her son, Z.J., a minor child. No findings of fact and conclusions of law
were requested, and none were signed and filed in the proceeding commenced by the
Department of Protective and Regulatory Services. (1) Presenting two issues, Colleen
contends (1) the trial court committed reversible error by not assuring that the court
appointed attorney ad litem for the child performed her duties according to section 107.014
of the Texas Family Code Annotated (Vernon 2001) and the American Bar Association
Standards of Practice for Attorneys Who Represent Children in Abuse and Neglect Cases,
and (2) there was no evidence or insufficient evidence to support the trial court's findings
that she knowingly placed or allowed the child to remain in conditions or surroundings
which endangered the physical or emotional well-being of the child, engaged in conduct
or knowingly placed the child with persons who engaged in conduct which endangered the
physical or emotional well-being of the child, or termination of her parental rights was in the
best interest of the child. We affirm.

 Colleen is the natural mother of Z.J., who was born on November 26, 1995, and was
six years old when the trial court appointed an attorney ad litem to represent his interest. 
Z.J.'s natural father is deceased.

 By her first issue, Colleen contends the trial court committed reversible error by not
assuring that the court appointed attorney ad litem for Z.J. performed her duties according
to section 107.014 of the Code and the American Bar Association Standards of Practice
for Attorneys Who Represent Children in Abuse and Neglect Cases. We disagree. 
Colleen asserts the record does not demonstrate that the court appointed attorney ad litem
for Z.J. ever reviewed any of his relevant medical, psychological, or school records, or that
she interviewed him or any of the parties prior to trial. Although section 107.014 prescribes
seven specific duties to be performed by the ad litem, it does not require that evidence be
presented so the record will show that the ad litem performed the statutory duties and does
not authorize or direct the trial court to supervise or monitor the ad litem's services. 
Further, the statute does not authorize either a parent or another party to present any
challenge to the services rendered by the ad litem or provide that the failure of an ad litem
to perform the seven duties constitutes reversible error of a judgment terminating parental
rights.

 Although section 107.014 is not implicated, in D__F__ v. State, 525 S.W.2d 933
(Tex.Civ.App.--Houston [1st Dist.] 1975, writ ref'd n.r.e.), among other points of error, the
child's mother contended the evidence was legally and factually insufficient to support the
termination of the rights of the natural father. After noting that the mother's attorney did
not represent the father, the court held the mother did not have any standing to present
any contentions as to the child's father. Because Colleen's attorney does not make any
appearance here on behalf of Z.J., and section 107.014 does not authorize a parent to
challenge an order of termination of parental rights on the ground that the ad litem did not
comply with section 107.014, we hold that Colleen has no standing to present her first
issue.

 Moreover, as argued by DFPS, neither party may take a position on appeal that was
not presented to the trial court. McDuffie v. Blassingame, 883 S.W.2d 329, 335 (Tex.App.
--Amarillo 1994, writ denied). In order to preserve a complaint for appellate review, a party
must present to the trial court a timely request, objection, or motion, state the specific
grounds thereof, and obtain a ruling. Tex. R. App. P. 33.1(a)(1). If however, the matter
would not otherwise appear in the record, then a party may preserve an appellate
complaint by a formal bill of exception as allowed by Rule 33.2 of the Texas Rules of
Appellate Procedure. McDuffie, 883 S.W.2d at 335. Here, however, Colleen's complaint
was not presented to the trial court and thus, the issue presents nothing for review. 
Colleen's first issue is overruled.

 By her second issue, Colleen contends there was no evidence or insufficient
evidence to support the trial court's finding that she knowingly allowed Z.J. to remain in
conditions or surroundings which endangered the physical or emotional well-being of the
child, engaged in conduct or knowingly placed the child with persons who engaged in
conduct that endangered the physical or emotional well-being of the child, or that
termination of her parental rights was in the best interest of her child. Tex. Fam. Code
Ann. § 161.01(d), (e). We disagree.

Standard of Review


 The natural right existing between parents and their children is of constitutional
dimension. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination
proceedings must be strictly scrutinized. In Interest of G.M., 596 S.W.2d 846 (Tex. 1980). 
A termination decree is complete, final, irrevocable, and divests for all time that natural
right as well as all legal rights, privileges, duties, and powers with respect to each other
except for the child's right to inherit. Holick, 685 S.W.2d at 20. In proceedings to terminate
the parent-child relationship brought under section 161.001 of the Family Code, the
petitioner must establish one or more acts or omissions enumerated under subsection (1)
of the statute and must additionally prove that termination of the parent-child relationship
is in the best interest of the child. Both elements must be established and proof of one
element does not relieve the petitioner of the burden of proving the other. See Holley v.
Adams, 544 S.W.2d 367, 370 (Tex. 1976). 

 Because termination of parental rights is of such weight and gravity, due process
requires the petitioner to justify termination by clear and convincing evidence. § 161.001; 
In Interest of G.M., 596 S.W.2d at 847. This standard is defined as "that measure or
degree of proof which will produce in the mind of the trier of fact a firm belief or conviction
as to the truth of the allegations sought to be established." Id. Although the clear and
convincing burden of proof required at the trial level is well settled, appellate courts have
struggled to reconcile this burden of proof with the standard for appellate review of
challenges to the sufficiency of evidence. As this Court has previously noted, the clear and
convincing standard does not alter the rules generally applicable when appellate courts
review factual findings. In Interest of R.D.S., 902 S.W.2d 714, 716 (Tex.App.--Amarillo
1995, no writ). 

 That being said, we turn to the standards of review for challenges to sufficiency of
the evidence. In a legal sufficiency review of the evidence to support an order terminating
parental rights, we look at all (2) the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could have formed a firm belief or conviction
that its finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate
deference to the factfinder's conclusions and the role of a court conducting a legal
sufficiency review, looking at the evidence in the light most favorable to the judgment
means that a reviewing court must assume the factfinder resolved disputed facts in favor
of its finding if a reasonable factfinder could do so. Id. Thus, we disregard all evidence
that a reasonable factfinder could have disbelieved or found to have been incredible. Id. 

 The standard for reviewing the factual sufficiency of termination findings is whether
the evidence is such that a reasonable factfinder could form a firm belief or conviction
about the truth of DFPS's allegations. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). Under
that standard, we consider whether the disputed evidence is such that a reasonable
factfinder could not have resolved the disputed evidence in favor of its finding. In re J.F.C.,
96 S.W.3d at 266. If, in light of the entire record, the disputed evidence that a reasonable
factfinder could not have credited in favor of the finding is so significant that a factfinder
could not reasonably have formed a firm belief or conviction, then the evidence is factually
insufficient. Id.

 According to an offense report of the Texas Department of Public Safety, on April
13, 2001, Colleen and Z.J. were passengers in a pickup driven by Colleen's paramour,
Summerford. After Summerford was stopped for a traffic violation, the DPS trooper
discovered a parole warrant was outstanding for Summerford's arrest. He and Colleen
were taken to Tahoka and arrested for possession of a controlled substance with intent to
deliver. The arresting officer made arrangements for the placement of Z.J. with relatives.

 The offense report also indicated that Summerford had six prior arrests for
narcotics, including delivery of a controlled substance and possession with intention to
deliver, and three prior charges for burglary. During a search of the pickup, in addition to
a substantial quantity of methamphetamine, the officer found a set of scales, baggies, and
syringes. The report further indicated that Colleen had told the officer she knew
Summerford had a criminal record and she had recently used drugs. 

 The evidence is replete with instances of Colleen's drug use. However, Colleen
admitted at trial that she was an addict and had been using methapetamine "all of [Z.J.'s]
life." In addition, Colleen admitted it was not a good thing for her to take Z.J. out with a
drug dealer and that she knew Summerford was selling drugs. 

 Upon being notified of the events of April 13, 2001, the DFPS commenced an
investigation and Z.J. was placed with relatives under a safety plan on June 6, 2001.
Among other things, the safety plan required Colleen to refrain from drug or alcohol use. 
However, she did not comply with the plan and a drug assessment found her to be
chemically dependent. Based on that determination, she was referred to outpatient drug
and alcohol treatment and failed to show up for many appointments. 

 Despite Z.J.'s relatives' admission that they violated the safety plan by allowing Z.J.
to stay with Colleen, he was again placed with them upon their agreement not to allow
Colleen to have contact with Z.J. without the consent of DFPS. Colleen and her relatives,
however, violated the plan and resultantly, Z.J. was placed in foster care. At trial, Colleen
admitted she did not visit with her son between August 15, 2002 and June 2003. 

 A DFPS caseworker testified that Colleen's continued drug use and her failure to
seek treatment and participate in any services offered to help her quit using drugs 
endangered Z.J.'s well being and prevented her from providing a safe environment for him. 
A licensed professional counselor worked with Z.J. for several months. According to her
testimony, initially he was overactive, impulsive, and defiant; however, while in foster care
and under her counseling, he exhibited "excellent progress overall." The counselor further
testified that Z.J. responded very well to his placement at Boys Ranch and, in her opinion, 
he "could be adoptable."

 Where, as here, findings of fact or conclusions of law were not requested and none
were filed, we must presume that every disputed fact issue was found by the trial court in
support of the judgment rendered. Fields v. Texas Emp. Ins. Ass'n, 565 S.W.2d 327, 329
(Tex.Civ.App.--Amarillo 1978, writ ref'd n.r.e.). In the summary of her argument, Colleen
contends there was no evidence or insufficient evidence that (1) Z.J. was placed in a
dangerous situation, (2) Z.J. was placed with persons who were engaging in conduct that
could jeopardize his welfare, and (3) there was no evidence that Z.J. was in danger while
in her care and custody. The evidence, however, presents a history of continuous drug
abuse and addiction, criminal activity by Colleen, and placement of Z.J. in an environment
with a known drug dealer with a criminal record. Contrary to Colleen's argument, the
record contains both direct and circumstantial evidence of a probative nature from which
the factfinder could have formed a firm belief or conviction that the allegations of DFPS
were true. In re J.F.C., 96 S.W.3d at 266. Thus, we conclude the evidence is legally and
factually sufficient to support the trial court's termination order. Moreover, considering that
(1) Z.J.'s father is deceased, (2) his relatives were unable to abide by the service plans,
and (3) Colleen's lifestyle, the evidence is also sufficient to support the trial court's
presumed finding that removal of Z.J. from the environment was in his best interest. 
Colleen's second issue is overruled.

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice


 


 

 

 


 


1. Now referred to as the Department of Family and Protective Services (DFPS).
2. Circumstantial evidence may be used to establish any material fact, but it must
transcend mere suspicion, provided the material fact must be reasonably inferred from the
known circumstances, and circumstantial evidence often involves linking what may be
apparently insignificant and unrelated events to establish a pattern. Lozano v. Lozano, 52
S.W.3d 141, 149 (Tex. 2001).