NO. 07-05-0437-CR
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 07-05-0440-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 11, 2007
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â ______________________________

RAUL GUTIERREZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 69TH DISTRICT COURT OF MOORE COUNTY;

NO. 3707, 3663; HONORABLE RON ENNS, JUDGE
_______________________________


Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â In two companion appeals Raul Gutierrez challenges his convictions for the felony
offenses of aggravated sexual assault and indecency with a child. The prosecutions arose
out of separate events against two related child victims. He presents three issues
challenging events during the victimsâ testimony. His fourth issue challenges admissibility
of expert testimony from a sexual assault nurse examiner. We will affirm both judgments.
Â Â Â Â Â Â Â Â Â Â Appellant was initially charged in March 2005 of sexually assaulting his five-year-old
cousin AH. This indictment contained two counts and was assigned cause number 3663. 
The cause number 3663 indictment alleged aggravated sexual assault of AH and that
appellant engaged in sexual contact by touching her genitals. A second indictment, filed
in May 2005 and assigned cause number 3707, contained four counts alleging aggravated
sexual assault of his nine-year-old cousin SH. Appellant pled not guilty in both cases and
they were consolidated for a jury trial held in October 2005. In cause number 3663 the jury
found appellant not guilty of aggravated sexual assault but guilty of indecency with a child. 
It assessed punishment at twenty years confinement. It found him guilty of all four counts
in cause number 3707 and assessed punishment at life imprisonment. 
Â Â Â Â Â Â Â Â Â Â SH and AH were the Stateâs final two witnesses. Just before their testimony the trial
court advised counsel that he planned to instruct the jury that it was the courtâs policy in all
cases where children had to testify âthat a court-appointed CASA volunteer sit with the
childâ and the jury was not to place any significance on that fact. Defense counsel
objected that âitâs a comment on the evidenceâ and would bolster the childrenâs testimony. 
He requested the children âcome up there by themselves and testify.â The court overruled
the objection and instructed the jury as described,


 including the name of the CASA
volunteer. 
Â Â Â Â Â Â Â Â Â Â Appellant presents two challenges to the trial courtâs use of the CASA volunteer at
trial. Through his first issue appellant alleges a deprivation of his right of confrontation as
guaranteed by the Sixth Amendment to the United States Constitution and Article I, section
10 of the Texas Constitution. In his second issue appellant argues the trial court
improperly commented on the weight of the evidence through its procedure and improperly
bolstered the testimony of the witnesses. He also argues the trial court should have made
a finding the procedural modification was necessary before authorizing use of the CASA
volunteer. 
Â Â Â Â Â Â Â Â Â Â Upon our review of the record, we find we are unable to consider appellantâs first
issue because his Sixth Amendment contention was not preserved for appeal.


 Appellantâs
objection to the presence of the CASA volunteer did not assert it would impair his right of
confrontation. See Mendez v. State, 138 S.W.3d 334, 340-42 (Tex.Crim.App. 2004) (most
constitutional rights are subject to preservation requirement of Rule 33.1); Parades v.
State, 129 S.W.3d 530, 535 (Tex.Crim.App. 2004) (failure to object to testimony as
violation of Confrontation Clause waived complaint). See also Ramirez v. State, No. 02-06-0135-CR, 2004 WL 2997747 (Tex.App.âFort Worth January 11, 2007, no pet.); Morris
v. State, No. 02-06-0136-CR, 2007 WL 80012 (Tex.App.âFort Worth January 11, 2007, no
pet.); and Meeks v. State, No. 03-03-0509-CR, 2005 WL 1489593 (Tex.App.--Austin June
23, 2005, no pet.) (applying rule).


 
Â Â Â Â Â Â Â Â Â Â Appellant next argues the procedure impermissibly bolstered the childrenâs
testimony


 and was effectively a comment on the evidence by the trial court.


 He contends
that by instructing the jury the volunteer was court-appointed it could have led the jury to
infer the judgeâs endorsement of the testimony. Appellant cites article 38.05 of the Code
of Criminal Procedure, which directs judges to refrain from commenting on the weight of
evidence or making any remark calculated to convey to the jury the judgeâs opinion of the
case. Tex. Code Crim. Proc. Ann. art. 38.05 (Vernon 1979). Appellant cites also Hoang
v. State, 997 S.W.2d 678 (Tex.App.âTexarkana 1999, no pet.), which describes improper
comments as including trial court statements implying approval of the Stateâs argument and
statements that, âhowever impartially they may have been made, may have led the jury to
infer the judgeâs own opinion of the merits of the case.â Id. at 681. 
Â Â Â Â Â Â Â Â Â Â We find neither the use of the court-appointed volunteer, nor the courtâs instruction,
to be improper comments on the evidence. The court told the jury why the volunteer was
present and instructed them to place no significance on her presence. We do not agree
the instruction implied the courtâs endorsement of the credibility of the six- and ten-year-old
witnesses, or otherwise conveyed the judgeâs own opinion of the merits of the case. See
Conrad, 10 S.W.3d at 47 (rejecting a similar argument). We overrule appellantâs second
issue. 
Â Â Â Â Â Â Â Â Â Â Appellantâs third issue assigns error to the trial courtâs permitting SH to display a
cross during her testimony. He argues the error further deprived him of his right of
confrontation. As with his first issue, review of the record demonstrates the purported error
was not preserved for review.


 The third issue is overruled.
Â Â Â Â Â Â Â Â Â Â In his final issue appellant challenges the admissibility of testimony of Becky OâNeal,
the sexual assault nurse examiner who examined AH. He argues the testimony was
inadmissible because it failed to meet the test for reliability of scientific testimony adopted
in Kelly v. State, 832 S.W.2d 568 (Tex.Crim.App. 1992), and included inadmissible
hearsay. We overrule the issue. 
Â Â Â Â Â Â Â Â Â Â Appellantâs argument first focuses on OâNealâs testimony relating statements AH
made at the time of her examination of the child. Review of the trial testimony reveals that,
in response to a question on cross examination by appellantâs counsel, OâNeal repeated
the testimony concerning the childâs statements to which appellant earlier had objected. 
Appellant having adduced the testimony, his hearsay objection is not preserved for review. 
Reyes v. State, 84 S.W.3d 633, 638 (Tex.Crim.App. 2002). 
Â Â Â Â Â Â Â Â Â Â Appellant also presents argument addressing OâNealâs opinion testimony explaining
why AH might not exhibit any physical evidence of some of the assaults she alleged. We
find that even assuming the admission of the testimony was error,


 it would not require
reversal of the trial courtâs judgment, under the standard of Rule of Appellate Procedure
44.2(b). Under that standard we must disregard an error unless it affects a substantial
right. Id. A substantial right is affected when the error had a substantial and injurious effect
or influence in determining the jury's verdict. King v. State, 953 S.W.2d 266, 271
(Tex.Crim.App. 1997). The erroneous admission of evidence does not affect a defendantâs
substantial rights if after examining the record as a whole the reviewing court has a fair
assurance the error did not influence the jury, or had but a slight effect. Solomon v. State,
49 S.W.3d 356, 365 (Tex.Crim.App. 2001). 
Â Â Â Â Â Â Â Â Â Â Appellant argues the unreliable expert testimony âwholly misguided the jury to its
verdict.â The record does not support the assertion. OâNealâs opinion testimony concerned
the absence of physical evidence of penetration of a five-year-old. Appellant was not
charged with penetrating AHâs genitals and the jury acquitted him of the charge involving
penetration of her anus. As to AH, appellant was convicted only of indecency with a child. 

The record provides a fair assurance any error involved in the admission of the opinion
testimony did not influence the jury in reaching its verdict. We overrule appellantâs fourth
issue. Finding no reversible error, we affirm both judgments of the trial court. 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â James T. Campbell

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice







Do not publish.



xSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-bidi-language:EN-US;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("09-315\,%20354.cv%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("09-315\,%20354.cv%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("09-315\,%20354.cv%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("09-315\,%20354.cv%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:.9in 1.0in .8in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("09-315\,%20354.cv%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-09-0315-CV

NO. 07-09-0354-CV

Â 

IN THE
COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL B

Â 



SEPTEMBER
10, 2010

Â 



Â 

BYRON
MORGAN,

Â 

 Appellant

Â 

V.

Â 

D&S
MOBILE HOME CENTER, INC.,

Â 



   Appellee

Â 



Â 

STEPHANIE WYBLE, Individually and as Next Friend of FAITH
KUYKENDALL, a Minor, and HOPE KUYKENDALL, a Minor, Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Appellant


v.

Â 

D&S MOBILE HOME CENTER, INC.,Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Appellee

_____________________________

Â 

FROM THE 47TH DISTRICT COURT OF RANDALL
COUNTY;

Â 

NOS. 61,517-A AND 59,594-A; HONORABLE
HAL MINER, PRESIDING

Â 



Â 

Memorandum
Opinion

Â 



Â 

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Â Â Â Â Â Â Â Â Â Â Â  This appeal
emanates from a dispute involving the purchase of a mobile home.[1]Â  Though purportedly new, it actually was
not.Â  Though the damages caused during
its delivery were to be repaired, they purportedly were not.Â  Those who bought the home were Stephanie
Wyble and Byron Morgan (who allegedly represented themselves to be married
under the common law).Â  The seller, in
turn, was D&S Mobile Home Center, Inc.Â 
According to the record, Wyble sued D&S, asserting claims of fraud
and deceptive trade practices.Â  D&S
responded by denying liability and counterclaiming for sanctions.Â  It also sued Morgan, though he was not a
party to WybleÂs suit.Â  Additionally, the
recovery sought against Morgan generally consisted of specific performance;
that is, D&S sought to have him negotiate a settlement check delivered to
settle damage claims arising when the home was physically moved to its intended
lot in Amarillo.

Â Â Â Â Â Â Â Â Â Â Â  The trial
court not only granted D&S summary judgment but levied sanctions against
Wyble.Â  Whether it did so correctly is
what we are being asked to address.Â  For
the reasons which follow, we will reverse the the judgments and sanction order.

Â Â Â Â Â Â Â Â Â Â Â  MorganÂs Claims

Â Â Â Â Â Â Â Â Â Â Â  Though
Morgan asserts a myriad of issues, all need not be addressed.Â  One is dispositive of the appeal, and it
pertains to whether D&S proved, as a mattler of law, its entitlement to a summary
judgment disposing of all claims.Â  We
conclude that it did not.

Â Â Â Â Â Â Â Â Â Â Â  As
previously alluded to, D&S sought specific performance of a settlement
agreement.Â  Per that accord, D&SÂ
insurer issued a check payable to both Morgan and D&S.Â  In return, Morgan executed a writing wherein
he agreed to:Â  

release, acquit and forever discharge
Essex Insurance Company Â and Shawn Fuller DBA D&S Mobile Home Center . . .
and his, her, their, or its agents, servants, successors, heirs, executors,
administrators, and all other persons, firms, corporations, associations, or
partnerships of and from any and all claims, actions, causes of action,
demands, rights, damages, costs, loss of service, expenses and compensation whatsoever,
which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of
any and all known and unknown, foreseen,and unforeseen, bodily and personal
injuries and property damage and the consequences thereof resulting or to
result from the accident, casualty, or event which occurred on or about the 15th
day of April 2007at or near Amarillo, TX. . . . [Emphasis added.]

Â 

It is understood and agreed that this
settlement is the compromise of a doubtful and disputed claim, and that the
payment made is not to be construed as an admission of liability on the part of
the party or parties hereby released, and that said releasees deny liability
therefore and intend merely to avoid litigation and their peace.Â  Furthermore, this release is intended only to
operate as a release of whatever claims the undersigned may have against the
releasees . . . .

Â 

The undersigned further declare(s) and represent(s) that no promise, inducement,
or agreement not herein expressed has been made to the undersigned, and that
this Release contains the entire agreement between the parties hereto, and that
the terms of this Release are contractual and not a mere recital . . . .Â  

Â 

The Âaccident, casualty, or eventÂ mentioned encompassed the
damages inflicted upon the mobile home while being transported to its lot in
Amarillo.Â  Assuming arguendo, that the document was and is enforceable, the record nonetheless
contains evidence of D&SÂ representation to Morgan, during the homeÂs
acquisition, that the mobile home was new when it was not.Â  Indeed, appearing within the summary judgment
record was evidence that the home not only had been sold to another person but
also that (as of the date of deposition) D&S had yet to cause title to be
transferred from the original buyer to Morgan.Â 
These circumstances provided basis for Morgan to complain, via his
Âcounterclaim,Â of D&S knowingly misrepresenting Â. . . that the home would
be of a particular quality, fitness, and valueÂ when it was not and of
committing Âcommon law fraudÂ and a Âdeceptive trade practice.ÂÂ  And, since they were unrelated to the Âaccident,
casualty, or eventÂ of April 15, 2007 (i.e.
the transportation of the home to Amarillo), they were not encompassed by the
release.[2]Â  Â This,
in turn, means that they were not encompassed by D&SÂ motion for summary
judgment since it was restricted to issues regarding the release and its
enforcement.Â  Consequently, the trial
court could not legitimately adjudicate them at the time.Â  Johnson
v. Brewer & Prichard, P.C., 73 S.W.3d 193, 204 (Tex. 2002) (holding it
error to adjudicate claims that fall outside the scope of the summary judgment
motion).Â  

Â Â Â Â Â Â Â Â Â Â Â  We further
note that D&S included, within the summary judgment evidence, the
deposition of Morgan.Â  At several points
during that deposition, Morgan described how D&S promised to repair the
damage incurred by the mobile home during its transit to Amarillo, how he
agreed to sign the release because D&S so promised, and how D&S failed
to complete the repairs as promised.Â  So
too did Morgan plead the affirmative defense of failed consideration in effort to
negate the enforceability of the release.Â 
This is important because when the consideration underlying a contract
fails, the contract becomes unenforceable.Â 
Federal Sign v. Texas S. Univ.,
951 S.W.2d 401, 409 (Tex. 1997).Â  Given
that the defense had been alleged, that D&S itself presented evidence
addressing the matter via its summary judgment proof, and that there was evidence
tending to illustrate that D&S failed to perform a promise used to induce
execution of the release, a material issue of fact existed and exists with regard
to the defense of failed consideration and the enforceability of the release.[3]


Â Â Â Â Â Â Â Â Â Â Â  Simply put, the
trial court erred in granting summary judgment in favor of D&S and against Morgan.Â  Thus, both the final judgment executed on
September 29, 2009, and summary judgment executed on January 12, 2009, will be
reversed.

Â Â Â Â Â Â Â Â Â Â Â  WybleÂs
Appeal

Â Â Â Â Â Â Â Â Â Â Â  Death Penalty Sanctions

Â Â Â Â Â Â Â Â Â Â Â  In
considering the appeal of Wyble, we first address the order entered by the
trial court on September 11, 2009, prohibiting her from offering Âany testimony
or evidence regarding damages in her case in chiefÂ and directing that her
ÂclaimsÂ be ÂdeniedÂ because she Âcannot put on evidence of the essential
element of damages in her case Â.ÂÂ  This
mandate was executed in response to the motion of D&S to sanction Wyble for
failing to supplement a discovery request.Â 
That is, she was asked during her deposition to identify the expert or
lay witnesses who were going to discuss the damages she allegedly
suffered.Â  No names were provided at the
time.Â  And, because the period allotted
to perform discovery allegedly had expired and she failed to supplement the particular
discovery request, D&S convinced the trial court to issue the
aforementioned order.Â  This was wrong,
according to Wyble, for various reasons.Â 
We agree.

Â Â Â Â Â Â Â Â Â Â Â  That the
order was tantamount to Âdeath penalty sanctionsÂ cannot reasonably be
denied.Â  Indeed, D&S described them
as such in a hearing.Â  That the period
for discovery had not ended when the trial court executed its September 11th
sanctions order is also beyond dispute.Â  Indeed,
before then D&S itself had requested and caused the trial court to ÂreopenÂ
and extend discovery to October 15, 2009.Â 
Additionally, the order manifesting that new deadline was executed on
August 7, 2009, or about a month before the Âdeath penaltyÂ sanction was
issued. Â And, by September 11th, Wyble
had Â served D&S with a ÂDesignation of
ExpertÂ and thereby supplied D&S with the supposedly outstanding information.Â  Thus, the premise underlying the sanction was
non-existent.Â  Discovery had not closed
and the response was supplemented before the death penalty sanction issued.[4]Â  Simply put, the trial court abused its
discretion in entering the September 11th order.

Â Â Â Â Â Â Â Â Â Â Â  Â  Â Â Summary
Judgments Against Wyble

Â Â Â Â Â Â Â Â Â Â Â  Next, Wyble
contends that the trial court erred in entering summary judgments favoring
D&S.Â  We agree.

Â Â Â Â Â Â Â Â Â Â Â  D&S
twice moved for summary judgment against Wyble.Â 
One was filed on June 22, 2009, and the other on September 23,
2009.Â  The order granting final summary
judgment was executed on September 29, 2009, and upon which motion it acted
went unspecified.Â  If it was the one
filed on September 23rd, then granting it was error.Â  This is so because the earliest date upon
which a trial court may hear a pending motion for summary judgment is
twenty-one days after the motion is served on the non-movant.Â  Tex.
R. Civ. P. 166a(c); Fertic v. Spencer, 247 S.W.3d 242, 248
(Tex. App.ÂEl Paso 2007, pet. denied).Â  According
to the certificate of service appearing on D&SÂ September 23rd motion,
Wyble was served with the document on September 18, 2009.Â  Needless to say, the time period between
September 18th and the 29th is a mere eleven days, not the twenty one mandated
by Rule 166a(c).Â  Thus, the trial court
could not have legitimately considered the September 23rd motion.Â  

Â Â Â Â Â Â Â Â Â Â Â  As for the June
motion, D&S thought itself entitled to summary judgment because Wyble 1)
was not a consumer under the Deceptive Trade Practices Act since Morgan allegedly
sought and acquired the mobile home and 2) could proffer no evidence of damages.[5]Â  Regarding the former, it has been clear for
many years that being a consumer does not require some contractual nexus or privity
to the underlying transaction.Â  Cook-Pizzi v. Van Waters & Rogers, Inc.
94 S.W.3d 636, 644 (Tex. App.ÂAmarillo 2002, pet. denied); McDuffie v. Blassingame, 883 S.W.2d 329, 333 (Tex. App. ÂAmarillo 1994,
writ denied).Â  Rather, one need only be
an intended beneficiary of the sale, lease, or service to qualify.Â  McDuffie
v. Blassingame, 883 S.W.2d at 333;
see Service Corp. IntÂl v. Aragon, 268 S.W.3d 112, 117 (Tex. App.ÂEastland
2008, pet. denied) (holding that a third-party beneficiary can be a consumer if
the transaction was specifically required by or intended to benefit the third
party and the goods or service was rendered to benefit the intended
beneficiary).Â  And, family members who
did not personally execute the agreement in question or pay for the services or
goods obtained may nonetheless be consumers.Â 
See e.g., Service Corp. IntÂl v.
Aragon, supra (involving the
interment of a body in the wrong cemetery plot).Â  

Â Â Â Â Â Â Â Â Â Â Â  The summary
judgment record before us contains evidence that Morgan and Wyble were common
law husband and wife at the time the mobile home was purchased and the home was
acquired for the family (i.e. Morgan,
Wyble and her children) to live in.Â  That
is enough evidence tending to illustrate that the abode was specifically
required by or intended to benefit Wyble and the children and rendered to
benefit those same individuals; consequently, D&S failed to carry its
summary judgment burden and prove as a matter of law that they were not
consumers.Â  

Â Â Â Â Â Â Â Â Â Â Â  As for the
purported lack of evidence regarding WybleÂs damages, she testified during her
deposition (a transcription of which was attached by D&S to its motion)
that she was damaged in an amount equal to the value of a like home without the
defects at issue.Â  Furthermore, the value
of such a home was $130,000.Â  This alone
is some evidence of damages, and its presence in the record negates the
proposition of D&S that she could tender none.Â  

Â Â Â Â Â Â Â Â Â Â Â  The issues
addressed above are dispositive of the appeal.Â 
Indeed, the others posed by Wyble and Morgan are dependent upon the
legitimacy of the summary judgments and sanction order entered by the trial court.Â  Accordingly, we reverse the final and summary
judgments as well as the order denying Wyble the opportunity to proffer
evidence of damages and remand the causes to the trial court.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Brian
Quinn 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
JusticeÂ  Â Â Â Â Â Â Â 











[1]Because
summary judgments are involved, we construe the evidentiary record in a light
most favorable to the non-movant.Â  See
Valance Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005) (requiring as much from the reviewing court).Â  





[2]That
neither D&S nor the trial court viewed the summary judgment as adjudicating
all the causes asserted by Morgan is exemplified by comments made during a May
15, 2009 hearing.Â  A summary judgment
order had been signed about four months earlier, that is, in January of
2009.Â  Yet, the May 15th hearing involved
special exceptions filed by D&S on May 6, 2006, to MorganÂs
counterclaim.Â  And, at that hearing, the
trial court stated Âthat [the] . . . Special Exceptions against the
counterclaim of . . . Morgan be answered by . . . the 29th of
May.ÂÂ  Had the January 2009 summary
judgment adjudicated all claims and causes of action, there would have been no
need for the trial court to address whether the counterclaims were sufficiently
pled at the May 15th hearing or to order Morgan to modify them by May
29th.Â Â  





[3]No
one alleged via their summary judgment motion or responses thereto that the
parole evidence rendered unenforceable the claim of failed consideration.Â  Thus, we do not address that issue on appeal
since summary judgment can be affirmed or reversed only on those grounds
included in the summary judgment motion, evidence, and responses there.Â  Tex. R. Civ. P. 166a(c); Johnson v. Driver, 198 S.W.3d 359, 362
(Tex. App.ÂTyler 2006, no pet.). 





[4]That the trial court considered the decision to
ÂreopenÂ discovery as implicitly negating its previously issued order denying
Wyble the opportunity to proffer evidence on damages is illustrated by a
comment uttered at a September 11, 2009 hearing.Â  There, it stated that Â[a]s far as Ms. Wyble
is concerned, I donÂt know what discovery reopening will do, but it may change
everything and you may have to resubmit motions for Summary Judgment . . . . you
may have allowed [her] to create factual issues . . . .ÂÂ  





[5]Though
the issues specified in the motion for summary judgment are described in
numerous ways, each focuses on WybleÂs alleged
inability to establish damages because she did not buy or pay for the mobile
home.