NO. 07-03-0401-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 29, 2004

_____

IN THE INTEREST OF Z.J., A MINOR CHILD

_____

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-516,050; HONORABLE BLAIR CHERRY, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**OPINION**

Colleen Jiminez appeals from an order following a bench trial terminating her parental rights to her son, Z.J., a minor child. No findings of fact and conclusions of law were requested, and none were signed and filed in the proceeding commenced by the Department of Protective and Regulatory Services.[1] Presenting two issues, Colleen contends (1) the trial court committed reversible error by not assuring that the court

_____

[1]Now referred to as the Department of Family and Protective Services (DFPS).

appointed attorney ad litem for the child performed her duties according to section 107.014 of the Texas Family Code Annotated (Vernon 2001) and the American Bar Association Standards of Practice for Attorneys Who Represent Children in Abuse and Neglect Cases, and (2) there was no evidence or insufficient evidence to support the trial court's findings that she knowingly placed or allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child, engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child, or termination of her parental rights was in the best interest of the child. We affirm.

Colleen is the natural mother of Z.J., who was born on November 26, 1995, and was six years old when the trial court appointed an attorney ad litem to represent his interest. Z.J.'s natural father is deceased.

By her first issue, Colleen contends the trial court committed reversible error by not assuring that the court appointed attorney ad litem for Z.J. performed her duties according to section 107.014 of the Code and the American Bar Association Standards of Practice for Attorneys Who Represent Children in Abuse and Neglect Cases. We disagree. Colleen asserts the record does not demonstrate that the court appointed attorney ad litem for Z.J. ever reviewed any of his relevant medical, psychological, or school records, or that she interviewed him or any of the parties prior to trial. Although section 107.014 prescribes seven specific duties to be performed by the ad litem, it does not require that evidence be

2

presented so the record will show that the ad litem performed the statutory duties and does not authorize or direct the trial court to supervise or monitor the ad litem's services. Further, the statute does not authorize either a parent or another party to present any challenge to the services rendered by the ad litem or provide that the failure of an ad litem to perform the seven duties constitutes reversible error of a judgment terminating parental rights.

Although section 107.014 is not implicated, in D__F__ v. State, 525 S.W.2d 933 (Tex.Civ.App.--Houston [1st Dist.] 1975, writ ref'd n.r.e.), among other points of error, the child's mother contended the evidence was legally and factually insufficient to support the termination of the rights of the natural father. After noting that the mother's attorney did not represent the father, the court held the mother did not have any standing to present any contentions as to the child's father. Because Colleen's attorney does not make any appearance here on behalf of Z.J., and section 107.014 does not authorize a parent to challenge an order of termination of parental rights on the ground that the ad litem did not comply with section 107.014, we hold that Colleen has no standing to present her first issue.

Moreover, as argued by DFPS, neither party may take a position on appeal that was not presented to the trial court. McDuffie v. Blassingame, 883 S.W.2d 329, 335 (Tex.App. --Amarillo 1994, writ denied). In order to preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion, state the specific

grounds thereof, and obtain a ruling. Tex. R. App. P. 33.1(a)(1). If however, the matter would not otherwise appear in the record, then a party may preserve an appellate complaint by a formal bill of exception as allowed by Rule 33.2 of the Texas Rules of Appellate Procedure. *McDuffie*, 883 S.W.2d at 335. Here, however, Colleen's complaint was not presented to the trial court and thus, the issue presents nothing for review. Colleen's first issue is overruled.

By her second issue, Colleen contends there was no evidence or insufficient evidence to support the trial court's finding that she knowingly allowed Z.J. to remain in conditions or surroundings which endangered the physical or emotional well-being of the child, engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child, or that termination of her parental rights was in the best interest of her child. Tex. Fam. Code Ann. § 161.01(d), (e). We disagree.

**Standard of Review**

The natural right existing between parents and their children is of constitutional dimension. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings must be strictly scrutinized. In Interest of G.M., 596 S.W.2d 846 (Tex. 1980). A termination decree is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. *Holick*, 685 S.W.2d at 20. In proceedings to terminate

4

the parent-child relationship brought under section 161.001 of the Family Code, the petitioner must establish one or more acts or omissions enumerated under subsection (1) of the statute and must additionally prove that termination of the parent-child relationship is in the best interest of the child. Both elements must be established and proof of one element does not relieve the petitioner of the burden of proving the other. *See* Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976).

Because termination of parental rights is of such weight and gravity, due process requires the petitioner to justify termination by clear and convincing evidence. § 161.001; *In Interest of G.M.*, 596 S.W.2d at 847. This standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. Although the clear and convincing burden of proof required at the trial level is well settled, appellate courts have struggled to reconcile this burden of proof with the standard for appellate review of challenges to the sufficiency of evidence. As this Court has previously noted, the clear and convincing standard does not alter the rules generally applicable when appellate courts review factual findings. In Interest of R.D.S., 902 S.W.2d 714, 716 (Tex.App.--Amarillo 1995, no writ).

That being said, we turn to the standards of review for challenges to sufficiency of the evidence. In a legal sufficiency review of the evidence to support an order terminating

parental rights, we look at all[2] the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id*. Thus, we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id*.

The standard for reviewing the factual sufficiency of termination findings is whether the evidence is such that a reasonable factfinder could form a firm belief or conviction about the truth of DFPS's allegations. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). Under that standard, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id*.

---

[2]Circumstantial evidence may be used to establish any material fact, but it must transcend mere suspicion, provided the material fact must be reasonably inferred from the known circumstances, and circumstantial evidence often involves linking what may be apparently insignificant and unrelated events to establish a pattern. Lozano v. Lozano, 52 S.W.3d 141, 149 (Tex. 2001).

6

According to an offense report of the Texas Department of Public Safety, on April 13, 2001, Colleen and Z.J. were passengers in a pickup driven by Colleen's paramour, Summerford. After Summerford was stopped for a traffic violation, the DPS trooper discovered a parole warrant was outstanding for Summerford's arrest. He and Colleen were taken to Tahoka and arrested for possession of a controlled substance with intent to deliver. The arresting officer made arrangements for the placement of Z.J. with relatives.

The offense report also indicated that Summerford had six prior arrests for narcotics, including delivery of a controlled substance and possession with intention to deliver, and three prior charges for burglary. During a search of the pickup, in addition to a substantial quantity of methamphetamine, the officer found a set of scales, baggies, and syringes. The report further indicated that Colleen had told the officer she knew Summerford had a criminal record and she had recently used drugs.

The evidence is replete with instances of Colleen's drug use. However, Colleen admitted at trial that she was an addict and had been using methapetamine "all of [Z.J.'s] life." In addition, Colleen admitted it was not a good thing for her to take Z.J. out with a drug dealer and that she knew Summerford was selling drugs.

Upon being notified of the events of April 13, 2001, the DFPS commenced an investigation and Z.J. was placed with relatives under a safety plan on June 6, 2001. Among other things, the safety plan required Colleen to refrain from drug or alcohol use. However, she did not comply with the plan and a drug assessment found her to be

chemically dependent. Based on that determination, she was referred to outpatient drug and alcohol treatment and failed to show up for many appointments.

Despite Z.J.'s relatives' admission that they violated the safety plan by allowing Z.J. to stay with Colleen, he was again placed with them upon their agreement not to allow Colleen to have contact with Z.J. without the consent of DFPS. Colleen and her relatives, however, violated the plan and resultantly, Z.J. was placed in foster care. At trial, Colleen admitted she did not visit with her son between August 15, 2002 and June 2003.

A DFPS caseworker testified that Colleen's continued drug use and her failure to seek treatment and participate in any services offered to help her quit using drugs endangered Z.J.'s well being and prevented her from providing a safe environment for him. A licensed professional counselor worked with Z.J. for several months. According to her testimony, initially he was overactive, impulsive, and defiant; however, while in foster care and under her counseling, he exhibited "excellent progress overall." The counselor further testified that Z.J. responded very well to his placement at Boys Ranch and, in her opinion, he "could be adoptable."

Where, as here, findings of fact or conclusions of law were not requested and none were filed, we must presume that every disputed fact issue was found by the trial court in support of the judgment rendered. Fields v. Texas Emp. Ins. Ass'n, 565 S.W.2d 327, 329 (Tex.Civ.App.--Amarillo 1978, writ ref'd n.r.e.). In the summary of her argument, Colleen contends there was no evidence or insufficient evidence that (1) Z.J. was placed in a

dangerous situation, (2) Z.J. was placed with persons who were engaging in conduct that could jeopardize his welfare, and (3) there was no evidence that Z.J. was in danger while in her care and custody. The evidence, however, presents a history of continuous drug abuse and addiction, criminal activity by Colleen, and placement of Z.J. in an environment with a known drug dealer with a criminal record. Contrary to Colleen's argument, the record contains both direct and circumstantial evidence of a probative nature from which the factfinder could have formed a firm belief or conviction that the allegations of DFPS were true. *In re J.F.C.,* 96 S.W.3d at 266. Thus, we conclude the evidence is legally and factually sufficient to support the trial court's termination order. Moreover, considering that (1) Z.J.'s father is deceased, (2) his relatives were unable to abide by the service plans, and (3) Colleen's lifestyle, the evidence is also sufficient to support the trial court's presumed finding that removal of Z.J. from the environment was in his best interest. Colleen's second issue is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

9