

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-22-00754-CV

**IN THE INTEREST OF J.M.R.**, a Child

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2021PA01940
Honorable Raul Perales, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Patricia O. Alvarez, Justice
Liza A. Rodriguez, Justice, concurring in the judgment without opinion
Lori I. Valenzuela, Justice, concurring in the judgment without opinion

Delivered and Filed: May 3, 2023

AFFIRMED

In this parental rights termination case, the trial court terminated Mom's rights to her child, J.M.R.[1]  Mom challenges the legal and factual sufficiency of the evidence supporting the trial court's findings on statutory grounds (D), (N) and (O), and the best interest of the child.

Because the evidence is legally and factually sufficient to support the findings on ground (D) and the best interest of the child, we affirm the trial court's order.

### BACKGROUND

In this case, the trial court terminated Mom's and Dad's rights to J.M.R.  Because Mom is the only appellant, we limit our recitation of the facts to those relating to Mom and J.M.R.

---

[1] We use aliases to protect the child's identity.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

When J.M.R. was born, she tested positive for methamphetamines. Her meconium test results were positive for amphetamines and methamphetamines. The Department created a safety plan for J.M.R. to stay with her family during Mom's case with Child Protective Services (C.P.S.), but Mom absconded with J.M.R. for two months. After C.P.S. located Mom and J.M.R., the Department petitioned to remove J.M.R. The trial court granted the petition, and the Department placed J.M.R. in a foster home.

The following month, the Department created a Family Service Plan for Mom with a goal of family reunification. But Mom was on probation for a marijuana offense, and she violated the terms of her probation. As a result, Mom spent a portion of her C.P.S. case time in jail. The Department's caseworker made services and visits available to Mom when she was released. However, Mom waited to begin her participation in services until shortly before trial. By that time, she had missed at least half of her arranged visits with J.M.R. At the October 12, 2022 trial on the merits, the trial court terminated Mom's parental rights to J.M.R.

Mom appeals. She challenges the legal and factual sufficiency of the evidence supporting the trial court's findings on grounds (D), (N), and (O), and J.M.R.'s best interest. Before we address Mom's issues, we briefly recite the applicable evidentiary and appellate review standards.

### EVIDENCE REQUIRED, STANDARDS OF REVIEW

"[I]n a bench trial, the judge as the trier of fact weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies." *In re S.J.R.-Z.*, 537 S.W.3d 677, 691 (Tex. App.—San Antonio 2017, pet. denied); *accord In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.).

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

The evidentiary standard[i] the Department must meet and the statutory grounds[ii] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[iii] and factual[iv] sufficiency standards of review.  We apply those standards here.

### STATUTORY GROUNDS FOR TERMINATING MOM'S PARENTAL RIGHTS

In her first and second issues, Mom challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that her course of conduct met statutory grounds (D), (N), and (O).  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (N), (O).  We begin with ground (D).

### A.      Statutory Ground Finding Required

A single statutory ground finding, when accompanied by a best-interest-of-the-child finding, is sufficient to support a parental rights termination order.  *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.).  But "due process requires an appellate court to review and detail its analysis as to termination of parental rights under section 161.001(b)(1)(D) or (E) of the Family Code when challenged on appeal."  *In re Z.M.M.*, 577 S.W.3d 541, 543 (Tex. 2019).

### B.      Section 161.001(b)(1)(D)

#### 1.      Subsection (D)'s Provisions

Under subsection (D), a parent's rights may be terminated if, before the child was removed, *see In re R.S.-T.*, 522 S.W.3d at 108 (relevant period), the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child."  TEX. FAM. CODE ANN. § 161.001(b)(1)(D).  In the context of the statute, "'endanger' means to expose to loss or injury; to jeopardize."  *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).  Endangerment includes "parental conduct both before and after the child's birth."  *In re D.H.*, No. 09-16-00163-CV, 2016 WL 4485735, at *2

(Tex. App.—Beaumont Aug. 25, 2016, no pet.) (mem. op.) (citing *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)); *accord Avery v. State*, 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no writ).

"[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d at 109 (alteration in original) (quoting *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). "[A] single act or omission" may support terminating a parent's rights under subsection (D). *Id.* (citing *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied)). "Further, a fact-finder may infer from past conduct endangering the well-being of a child that similar conduct will recur if the child is returned to the parent." *In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.).

### 2. *Evidence of Conditions or Surroundings*

#### a. Parental Conduct During Pregnancy

As we stated above, Mom used drugs during her pregnancy with J.M.R. During her testimony, Mom stated that she did not know she was pregnant. However, the drug test that showed Mom and J.M.R. were both positive for amphetamines occurred at the time of J.M.R.'s birth. At trial, Mom admitted that her substance abuse led to J.M.R.'s removal.

#### b. Parental Conduct After Pregnancy

J.M.R. was the subject of a C.P.S. safety plan after she was born. Mom's family was committed to supervise J.M.R. as part of the safety plan. Nevertheless, Mom absconded with J.M.R. C.P.S. was not aware of J.M.R.'s location for two months as a result, and Mom was not complying with her C.P.S. safety plan during that time. "The trial court could view appellant's actions in violating the safety plan as conduct that endangered the child." *In re K.C.B.*, 280 S.W.3d

888, 895 (Tex. App.—Amarillo 2009, pet. denied) (citing *In re Z.J.*, 153 S.W.3d 535, 541 (Tex. App.—Amarillo 2004, no pet.)).

> 3.      *Sufficient Evidence under Subsection (D)*

Given the testimony, the trial court could have concluded that Mom knowingly endangered J.M.R. by using drugs leading up to J.M.R.'s birth. *See In re S.J.R.-Z.*, 537 S.W.3d at 691. Mom's claim that she did not know she was pregnant was ultimately unpersuasive since the positive test that triggered C.P.S.'s involvement occurred at the time of J.M.R.'s birth. Mom argues that her testimony that she did not know she was pregnant was undisputed and therefore dispositive. However, the trial court could have reasonably concluded that Mom was not being forthcoming about when she realized she was going to give birth and needed to abstain from drugs, especially considering that Mom flouted her commitment to a safety plan by absconding with J.M.R. *In re S.J.R.-Z.*, 537 S.W.3d at 695.

We conclude the evidence of Mom's course of conduct was legally and factually sufficient for the trial court to have found by clear and convincing evidence that, before J.M.R. was removed, Mom knowingly exposed her to dangerous conditions. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *Avery*, 963 S.W.2d at 553.

Because only a single statutory ground finding is needed to support an order terminating a parent's rights to a child, *In re A.V.*, 113 S.W.3d at 362, we need not address Mom's challenge to statutory grounds (N) and (O), *see* TEX. R. APP. P. 47.1; *In re R.S.-T.*, 522 S.W.3d at 111.

We overrule Mom's challenges to ground (D); her challenges to grounds (N) and (O) are moot.

## BEST INTEREST OF THE CHILD

In her third issue, Mom argues the evidence was legally and factually insufficient to support the trial court's finding that terminating her parental rights was in J.M.R.'s best interest. *See* TEX.

FAM. CODE ANN. § 161.001(b)(2). In our review, we consider the Texas Family Code statutory factors[v] and the *Holley* factors.[vi] These standards are well known, and we examine the evidence pertaining to the best interest of the child in the context of both.

The trial court heard the following testimony.

## A. Relevant Statutory Factors

### 1. Child's Age and Vulnerabilities

At the time of trial, J.M.R. was about thirteen months old. She was living in a foster home and doing well, as she was being treated and monitored for her birth-related health issues by several doctors. Because of Mom's drug use while she was pregnant, J.M.R. experienced stiffness and involuntary muscle contraction as an infant. Her foster parents had to keep J.M.R. up to date on her appointments with her physical therapist and her neurologist as a result.

Mom argues that there was no evidence presented to establish that she could not deal with these vulnerabilities. However, trial testimony showed that Mom waited until the month before trial to begin working on her C.P.S. family plan services. Testimony also revealed that Mom stopped working on the plan two weeks before trial. The record shows that Mom missed more than half of her arranged visits with J.M.R., oftentimes without notifying her caseworker ahead of time that she would not be present. Mom requested an extension of time to continue working towards reunification, citing struggles with addiction. Overall, the record shows that Mom was not equipped by the time of trial to deal with J.M.R.'s vulnerabilities. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *In re S.J.R.-Z.*, 537 S.W.3d at 693.

### 2. Frequency and Nature of Out-of-Home Placements

J.M.R. was originally relinquished to Mom and Mom's family after testing positive for amphetamines and methamphetamines at birth. However, the family failed to supervise Mom and J.M.R., as required by their safety plan. Mom absconded with J.M.R. for two months, during

which time the Department could not discover their whereabouts. When the Department finally located Mom and J.M.R., the Department successfully petitioned for J.M.R.'s removal and placed her with foster parents. J.M.R. remained with her foster parents thereafter. This factor weighs in favor of the trial court's best-interest finding. *See* TEX. FAM. CODE ANN. § 263.307(b)(2); *Interest of N.N.R.*, No. 04-20-00410-CV, 2021 WL 260240, at *4 (Tex. App.—San Antonio Jan. 27, 2021, pet. denied) (mem. op.).

### 3. *History of Abusive or Assaultive Conduct by the Child's Family*

The Department admitted Mom's family plan as an exhibit at trial. The family plan documented family violence concerns based on an altercation between Mom and two men that C.P.S. employees witnessed when they removed J.M.R. The Department's trial exhibit also documented Mom's report that she was beaten and injured by Dad during her pregnancy. Although the Department admitted this exhibit at trial, the parties did not further discuss Mom's history of family violence during testimony. But parties did elicit testimony about Mom's service plan requirement to attend domestic violence classes. Mom testified that she began attending these classes in the month before trial. Mom's caseworker testified that Mom did not complete the requirement. *See* TEX. FAM. CODE ANN. § 263.307(b)(7).

### 4. *Whether Mom has a history of substance abuse*

Mom undisputedly has a history of substance abuse. Her struggle with addiction and its impact on J.M.R. is the central focus of this cause on appeal. *See* TEX. FAM. CODE ANN. § 263.307(b)(8).

### 5. *Mom's Willingness and Ability to Participate in Counseling and Cooperate with the Department*

First, Mom did not cooperate with the Department—she initially evaded C.P.S. Then, she waited to begin working on her family plan. Before trial, she quit working on the family plan.

The C.P.S. family plan admitted at trial states that Mom experienced trauma and post-partum depression, but that she had neither been assessed nor treated for psychological issues. Over the course of Mom's case, she was required to participate in a psychological assessment and counseling. By the time of trial, Mom had participated in the psychological assessment, which resulted in a recommendation for further evaluation. Mom attended neither the further evaluation nor her required counseling. This factor weighs in favor of the trial court's best-interest determination. *See* TEX. FAM. CODE ANN. § 263.307(b)(10).

### 6. *Mom's Willingness and Ability to Effect Positive Changes*

Mom was required to participate in a drug abuse assessment and recommended treatment as well as intermittent drug tests. Mom participated in one drug test after she was released from jail. Close to trial, Mom participated in the drug abuse assessment. Mom did not complete her recommended drug treatment. The testimony reflects that Mom was given a treatment plan, but that she missed two sessions in the two weeks before trial. Overall, the record shows that Mom achieved no positive changes and that she had stopped participating in her family plan requirements two weeks before trial. *See* TEX. FAM. CODE ANN. § 263.307(b)(11).

### 7. *Whether Mom Demonstrates Adequate Parenting Skills*

Mom initially reported to C.P.S. that J.M.R. was her first child and that she had a lot to learn about parenting. C.P.S. assigned Mom to complete parenting classes during her case. Mom did not complete her parenting class requirement. She also missed most of her scheduled visitation with J.M.R. This factor weighs in favor of the trial court's best-interest finding. *See* TEX. FAM. CODE ANN. § 263.307(b)(12).

### 8. *Whether an Adequate Social Support System of Family and Friends is Available*

The C.P.S. report admitted at trial shows that Mom reported she had no extended social support system. She reported having support from her mother, her aunt, and her cousin, but she

stated that she did not trust her other nearby family members. She claimed that her extended family members reported her to the police for crimes she did not commit; she did not want them to be involved in her C.P.S. case; and she had no other network of support. This factor weighs in favor of the trial court's best-interest finding. *See* TEX. FAM. CODE ANN. § 263.307(b)(13).

**B.      Relevant *Holley* Factors**

*1.  Desires of the Child*

J.M.R. was thirteen months old at the time of trial, and she had spent minimal time with Mom. J.M.R. could not vocalize her desires, but the C.P.S. caseworker testified that J.M.R. would cling to her foster mom whenever the caseworker arrived to take J.M.R. for her scheduled visitation with Mom. "Evidence that a child is well-cared for by [her] foster family, is bonded to [her] foster family, and has spent minimal time in the presence of a parent is relevant to the best interest determination under the desires of the child factor." *Interest of U.G.G.*, 573 S.W.3d 391, 402 (Tex. App.—El Paso 2019, no pet.) (citing *In re R.A.G.*, 545 S.W.3d 645, 652-53 (Tex. App.—El Paso 2017, no pet.); *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). Both the C.P.S. caseworker and J.M.R.'s foster mom confirmed during their testimony that J.M.R. was being well-cared for in her foster placement, that she was bonded to her foster parents, and that she had spent minimal time with Mom. This factor weighs in favor of the trial court's best-interest finding. *See Holley*, 544 S.W.2d at 372 (factor (A)).

*2.  Providing for the Child's Needs*

According to the C.P.S. family plan admitted at trial, Mom originally reported that she had no permanent residence and no employment. She reported that she received support from her mother, her aunt, and her cousin, and she aspired to be rehired to her previous position with Renhill Staffing. She also stated that she was cut off from unemployment insurance, that she expected to

lose her Medicaid benefit, that she was staying at a hotel, and that she had no contingency plan in case she needed to secure alternative housing.

At trial, Mom stated that she worked for Renhill Staffing and had been employed by the agency for four years. Mom also stated that she delayed working on her C.P.S. service plan because she was looking for work after being released from jail. Regarding housing, Mom testified that she was looking for a city-funded apartment in Uvalde (despite also testifying that she was staying in her deceased mother's home).

Mom admitted that she provided no documentation regarding her house or her job to her C.P.S. caseworker. No evidence suggested that Mom could provide a safe and stable environment for J.M.R. *See Holley*, 544 S.W.2d at 372 (factor (B)); *see also In re J.G.S.*, 550 S.W.3d 698, 706 (Tex. App.—El Paso 2018, no pet.) ("A parent's incarceration is relevant to [her] ability to meet the child's present and future physical and emotional needs.").

### 3. Child's Placement (Parental Abilities and Home Stability)

Because J.M.R. suffered from drug-related health issues as an infant, she required regular health treatment and monitoring to help her recover from the setback. J.M.R.'s progress was not guaranteed, especially if she did not continue to attend her doctors' appointments for treatment and monitoring. Due to her foster parents' commitment and follow-through with medical care, J.M.R. made significant progress by the time of trial.

The caseworker testified that J.M.R.'s foster parents are providing a safe, stable, drug-free home for J.M.R. According to the caseworker, the Department's goal at the time of trial was nonrelative adoption through J.M.R.'s foster parents.

The child's attorney ad litem confirmed that J.M.R. was doing well with her foster placement. She advocated for J.M.R.'s parents' rights be terminated so J.M.R. could be adopted by her foster family. *See Holley*, 544 S.W.2d at 372 (factors (D), (G)).

*4. Acts/Omissions of Mom Indicating that the Parent-Child Relationship is Improper*

First, Mom used drugs during her pregnancy with J.M.R. Next, Mom disregarded her safety plan and absconded with J.M.R. for two months. Then, Mom went to jail for violating the terms of her probation in a marijuana-related criminal case. When Mom was released from jail, she delayed requesting a copy of her family plan. Once she had a copy of the family plan, Mom delayed engaging in her service requirements. She also missed more than half of her scheduled visits with J.M.R. At trial, Mom admitted that substance abuse led to J.M.R.'s removal. Nevertheless, Mom waited until two weeks before trial to participate in a drug assessment and to begin treatment sessions. Even then, she missed two sessions in that timeframe. Mom never provided documentation of stable housing, employment, or service completion to her caseworker. This factor weighs in favor of the trial court's best-interest finding. *See Holley*, 544 S.W.2d at 372 (factor (H)).

*5. Any Excuse for the Acts/Omissions of Mom*

Mom testified that she did not know she was pregnant. This was her response to the allegation that she consumed amphetamines and methamphetamines while pregnant with J.M.R. She offered no corroboration for her defense.

Mom also testified that she needed more time to complete her case requirements. She testified that the jail kept her copy of her family plan, that it was difficult to obtain a new one upon her release, and that it was difficult to begin working on the plan in a meaningful way before trial. However, Mom's case began before she was incarcerated. She spent two months avoiding C.P.S. Then, Mom was incarcerated for not following through with probation requirements. When she was released, Mom spent several months not following through with her C.P.S. requirements and not contacting her attorney.

At trial, Mom stated that she delayed working on her C.P.S. service plan because she was looking for work when she was released from jail. She also testified that she tested positive for COVID-19 at one point during her C.P.S. case. By the time of trial, Mom had both begun and quit working on her family plan. Mom's excuses for her acts and omissions do not tip the best-interest scale in her favor. *See Holley*, 544 S.W.2d at 372 (factor (I)).

## C.        Sufficient Evidence on Best Interest Finding

The trial court, as the factfinder, could have reasonably believed that Mom struggled with drug addiction and that she demonstrated no ability to provide safe and stable housing for J.M.R. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844. The trial court could also have believed that the foster parents were successfully providing a safe, stable home for J.M.R., they were meeting all her needs, and they would continue to do so in the future. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have reasonably formed a firm belief or conviction that it was in J.M.R.'s best interest for Mom's parental rights to be terminated. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (citing *In re C.H.*, 89 S.W.3d at 25); *see also* TEX. FAM. CODE ANN. § 263.307(a) ("In considering the factors established by this section, the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest."). Therefore, the evidence was legally and factually sufficient to support the trial court's best-interest-of-the-child finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We overrule Mom's third issue.

## TRIAL COURT'S DISCRETION TO APPOINT THE DEPARTMENT AS PERMANENT MANAGING CONSERVATOR

Mom argues that the trial court abused its discretion by appointing the Department as J.M.R.'s permanent managing conservator instead of her. *Contra In the Interest of E.R.*, 555 S.W.3d 796, 811 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing TEX. FAM. CODE ANN. § 161.207). Mom cites *In re Ostrofsky*, 112 S.W.3d 925, 930 (Tex. App.—Houston [14th Dist.] 2003, org. proceeding), and *In re R.D.Y.*, 51 S.W.3d 314, 321 (Tex. App—Houston [1st Dist.] 2001, pet. denied.), in support of her argument.

First, *In re Ostrofsky* was a mandamus action brought in a divorce proceeding under Texas Family Code section 156.006, Temporary Orders, in which Biological Mother was ordered by the trial court to temporarily place her children in boarding school, though she maintained the right to determine the children's primary residence. *See In re Ostrofsky*, 112 S.W.3d at 928–29. It is not applicable to this case.

*In re R.D.Y.* is a similarly inapplicable custody case in which the appellate court addressed Maternal Grandmother's successful motion to modify Biological Mom's sole custody. *See In re R.D.Y.*, 51 S.W.3d at 317. Nevertheless, Mom argues here that the parental presumption applied by the appellate court in *In re R.D.Y.*, a family custody case, should be explored in parental rights termination cases. *See id*. at 320.

Mom is correct that the parental presumption is deeply embedded in Texas law. *See Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976). However, her argument is undercut by the likelihood of parental drug addiction to cause harm. *See In re J.S.G.*, No. 14-08-00754-CV, 2009 WL 1311986, at *11 (Tex. App.—Houston [14th Dist.] May 7, 2009, no pet.) (mem. op.) (citing *In re De La Pena*, 999 S.W.2d 521, 528 (Tex. App.—El Paso 1999, no pet.)). More to the point, Mom's "challenge to the conservatorship appointment [is] subsumed in her appeal of the parental-

rights termination order." *In re D.N.C.*, 252 S.W.3d 317, 318 (Tex. 2008); *accord* TEX. FAM. CODE ANN. § 161.207; *Wiley v. Spratlan*, 543 S.W.2d at 350; *In re A.S.*, 261 S.W.3d 76, 92 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *In re D.N.C.*, 252 S.W.3d at 318).

Although Mom laments that this termination is based on speculation alone, we disagree because J.M.R. was born with amphetamine-related health issues, and Mom admitted that she has not overcome her addiction. *See In re J.S.G.*, 2009 WL 1311986, at *11. For the reasons stated above, we conclude that it is in J.M.R.'s best interest for Mom's parental rights to be terminated and for the Department to remain as the permanent managing conservator until J.M.R. is adopted. We overrule Mom's fourth issue.

## CONCLUSION

Having reviewed the evidence under the applicable standards, we conclude it was legally and factually sufficient to support the trial court's findings on ground (D) and the best interest of the child. For the same reason, we conclude that the trial court did not abuse its discretion by designating the Department as J.M.R.'s permanent managing conservator until J.M.R. could be adopted. Accordingly, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[i] Clear and Convincing Evidence. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in subsection 161.001(b)(1) of the Family Code and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under subsection 161.001(b)(1) may be used in determining the best interest of the child under subsection 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[ii] Statutory Grounds for Termination. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Mom's course of conduct met subsections (D), (N), and (O):

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
    (i)   the department has made reasonable efforts to return the child to the parent;
    (ii)  the parent has not regularly visited or maintained significant contact with the child; and
    (iii) the parent has demonstrated an inability to provide the child with a safe environment; [and]
(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* § 161.001(b)(1).

[iii] Legal Sufficiency. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.*

[iv] Factual Sufficiency. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

[v] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:
    (1)    the child's age and physical and mental vulnerabilities;
    (2)    the frequency and nature of out-of-home placements;
    (3)    the magnitude, frequency, and circumstances of the harm to the child;
    (4)    whether the child has been the victim of repeated harm after the initial report and intervention by the department;
    (5)    whether the child is fearful of living in or returning to the child's home;
    (6)    the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;
    (7)    whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;
    (8)    whether there is a history of substance abuse by the child's family or others who have access to the child's home;
    (9)    whether the perpetrator of the harm to the child is identified;
    (10)  the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;
    (11)  the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;
    (12)  whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:
        (A) minimally adequate health and nutritional care;
        (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;
        (C) guidance and supervision consistent with the child's safety;
        (D) a safe physical home environment;
        (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and
        (F) an understanding of the child's needs and capabilities; and
    (13)  whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[vi] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

    (A)  the desires of the child;

    (B)  the emotional and physical needs of the child now and in the future;

    (C)  the emotional and physical danger to the child now and in the future;

    (D)  the parental abilities of the individuals seeking custody;

    (E)  the programs available to assist these individuals to promote the best interest of the child;

    (F)  the plans for the child by these individuals or by the agency seeking custody;

    (G)  the stability of the home or proposed placement;

    (H)  the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

    (I)  any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).